[No. 43134. En Banc. January 7, 1975.]

ROBERT H. THOMPSON, *Respondent,* v. PHOEBE DEHART, *Appellant,* H. P. CLAUSING *et al.,* *Respondents.*

[See 6 Am. Jur. 2d, Attachment and Garnishment § 5.]

*Davis, Wright, Todd, Riese & Jones*, by *Richard A. Der-ham* and *Douglas W. Purcell*, for appellant.

*Casey, Pruzan, Kovarik & Shulkin*, by *Martin Godsil*, for respondents.

*Frank W. Smith, Jr.*, amicus curiae, on behalf of University of Washington School of Law.

HUNTER, J.—This appeal arises from an action initially brought by the plaintiff (respondent), Robert H. Thompson, as receiver for Nursing Home Building Corporation, doing business as Arden Nursing Home, against the defendants (appellants), Richard L. and Phoebe D. DeHart[1] for alleged misappropriation of corporate funds. The issue before this court concerns the attachment of certain unimproved real property owned by the defendants pursuant to RCW 7.12.020(6) and (7).

The facts, as shown by the record in this case, are as follows. In January of 1970, Dr. Herbert Clausing and Dr. Glenn Deer sold the stock of the Nursing Home Building Corporation (doing business as Arden Nursing Home) to the defendants DeHart for $700,000 on an installment contract. In April of 1971, Dr. Clausing and Dr. Deer served notice upon the defendants to declare a forfeiture of the contract for failure of the defendants to make morgtage payments required by the contract, and procured the appointment of Robert H. Thompson, as receiver pendente lite for the nursing home, to maintain the forfeiture action against the defendants. At the trial of the suit in the Superior Court for King County in May 1972 (King County Cause No. 737340), the plaintiff prevailed, and an appeal was thereafter taken.

On August 6, 1971, the present action (King County Cause No. 741252) was filed by the plaintiff Thompson, as

---

[1]It is to be noted that the defendant, Richard L. DeHart, died on May 6, 1973, and an order was thereafter entered substituting Phoebe DeHart as personal representative of the estate of Richard L. DeHart as a party defendant in this action. Consequently, in discussing the arguments on appeal, we shall refer to Phoebe DeHart as "the defendant."

receiver for the nursing home, against the defendants De-Hart to recover approximately $120,000 in corporate funds allegedly misappropriated for the defendants' own personal use and benefit. Prior to the filing of this suit, the plaintiff's attorney, on July 29, 1971, had conducted a deposition by oral examination of the defendant, Richard L. DeHart, who testified that he had conveyed two parcels of unimproved real property he had owned in Snohomish County to his brother-in-law shortly before the time of the deposition. In addition, he stated that he had conveyed his house in Lynnwood to a realtor during the same period. Following this deposition, the defendants, through their counsel of record at the time, arranged to have the unimproved properties in Snohomish County reconveyed to them to avoid the possible commencement of fraudulent conveyance actions. Meanwhile, on August 25, 1971, the plaintiff submitted an affidavit for a writ of attachment of the above real property owned by the defendants pursuant to RCW 7.12.020 (6) and (7),[2] alleging, among other things, that the defendants have assigned, secreted, or disposed of their property, or are about to delay, or defraud creditors, and that said defendants are about to convert their property or a part thereof into money for the purposes of placing it beyond the reach of their creditors. In accordance with a motion filed by the

---

[2]RCW 7.12.020(6) and (7) provide as follows:

"The writ of attachment shall be issued by the clerk of the court in which the action is pending; but before any such writ of attachment shall issue, the plaintiff, or someone in his behalf, shall make and file with such clerk an affidavit showing that the defendant is indebted to the plaintiff (specifying the amount of such indebtedness over and above all just credits and offsets), and that the attachment is not sought and the action is not prosecuted to hinder, delay, or defraud any creditor of the defendant, and either:

". . .

"(6) That the defendant has assigned, secreted, or disposed of, or is about to assign, secrete, or dispose of, any of his property, with intent to delay or defraud his creditors; or

"(7) That the defendant is about to convert his property, or a part thereof, into money, for the purpose of placing it beyond the reach of his creditors; . . ."

plaintiff, a reduction in the attachment bond was obtained, and the writ of attachment was thereafter issued by the Clerk of the Superior Court for King County pursuant to RCW 7.12.020(6) and (7). At no time was a hearing conducted regarding the issuance of the writ of attachment, nor were the defendants given an opportunity to object to the allegations made by the plaintiff. By virtue of the above writ of attachment, the Sheriff of Snohomish County levied upon certain described real property owned by the defendants on September 2, 1971, and the writ of attachment was thereafter duly recorded on September 9, 1971, in the office of the Auditor of Snohomish County.

In response to the present action filed by the plaintiff, the defendants, on June 23, 1972, filed an amended answer and counterclaim, and filed, in addition, a cross complaint against the third-party defendants (respondents), Dr. and Mrs. Herbert Clausing, and Dr. and Mrs. Glenn Deer. About this same time, judgment was entered against the defendants in the Superior Court for King County, and the receiver, Mr. Thompson, was dismissed as a party in the instant case, leaving the Nursing Home Building Corporation in his stead as the plaintiff. In addition, the defendants' home in Lynnwood had been resold by the realtor and the writ of attachment created a cloud on the title. Pursuant to a written stipulation of the parties, the net proceeds of that sale are presently held in the trust account of the realtor's attorney, and an order was subsequently entered releasing this property from the recorded writ of attachment.

On August 4, 1972, the defendants moved to discharge the writ of attachment as to the remaining unimproved real property in Snohomish County. After hearing the arguments of counsel and reviewing the record, the trial judge denied the motion on September 20, 1972. An appeal was filed with Division One of the Court of Appeals, and we thereafter accepted jurisdiction of the cause to consider the issues involved.

The defendant, Phoebe DeHart, argues on appeal that the

attachment of the real property in this case without a hearing violated her constitutional right to procedural due process under the reasoning in Fuentes v. Shevin, 407 U.S. 67, 32 L. Ed. 2d 556, 92 S. Ct. 1983 (1972). We disagree.

■ This case clearly falls under the "extraordinary situation" exception set forth in Fuentes v. Shevin, supra, holding that there may be a truly unusual set of circumstances which would justify the attachment of property without notice and an opportunity for a hearing. In reviewing the few limited situations in which such a summary procedure has been upheld, the United States Supreme Court outlined three distinctive features common to such cases on page 91:

> First, in each case, the seizure has been directly necessary to secure an important governmental or general public interest. Second, there has been a special need for very prompt action. Third, the State has kept strict control over its monopoly of legitimate force: the person initiating the seizure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance.

The court further stated on page 93:

> There may be cases in which a creditor could make a showing of immediate danger that a debtor will destroy or conceal disputed goods. But the statutes before us are not "narrowly drawn to meet any such unusual condition." Sniadach v. Family Finance Corp., supra [395 U.S. 337, 23 L. Ed. 2d 349, 89 S. Ct. 1820 (1969)], at 339. And no such unusual situation is presented by the facts of these cases.

After reviewing the record before us, we feel that the facts in the instant case do present such an unusual situation to fall within the above exception. The evidence presented to the trial court at the time of the motion to quash the writ of attachment clearly shows that an extraordinary situation did exist which justified the issuance of the writ of attachment without a hearing.

In the recent case of Mitchell v. W.T. Grant Co., 416 U.S.

600, 40 L. Ed. 2d 406, 94 S. Ct. 1895 (1974), the plaintiff, W. T. Grant Company, had sold certain personal property to the defendant upon which it had, by statute, a vendor's lien to secure the balance of the payments. The defendant-purchaser was in default. Under the statute the lien would have been lost in the event the property was sold to third parties. The plaintiff brought an action to recover the payments due and without notice to the defendant, attached the property. The United States Supreme Court stated on page 609:

It follows that if the vendor is to retain his lien, superior to the rights of other creditors of the buyer, it is imperative when default occurs that the property be sequestered in order to foreclose the possibility that the buyer will sell or otherwise convey the property to third parties against whom the vendor's lien will not survive. *The danger of destruction or alienation cannot be guarded against if notice and a hearing before seizure are supplied. The notice itself may furnish a warning to the debtor acting in bad faith.*

(Italics ours.)

Under the facts of the instant case it is abundantly clear that conducting a hearing prior to the issuance of the writ of attachment would have placed the plaintiff in the position of jeopardizing its creditor priority over the then-available assets for the satisfaction of any judgment secured against the defendants. During the course of the deposition taken of Richard L. DeHart on July 29, 1971, the plaintiff's attorney became aware of facts from which he was entitled to believe that the defendants had fraudulently or wrongfully conveyed certain parcels of land to third parties without fair consideration. In the days following the commencement of the action against the defendants for misappropriation of corporate funds, great uncertainty existed as to the possible actions by the defendants concerning the real property in Snohomish County, and justified the plaintiff in pursuing a course of action to protect its interests from the fraudulent or wrongful disposal of the

property and the accompanying difficulties in reaching the property.

In fact, the subsequent events following the issuance of the writ of attachment graphically demonstrate that the plaintiff's belief, that an attachment was essential to preserve its security for the satisfaction of any judgment obtained, was well founded. Following the recording of the writ of attachment on September 9, 1971, the defendants executed a demand promissory note to a Mr. Gordon H. Flattum for professional services performed, and Mr. Flattum later attached the real property owned by the defendants and obtained a judgment lien against the property relating back to November 2, 1971. Moreover, the land title reports contained in the record in the instant case show that immediately following the issuance of the plaintiff's writ of attachment, the defendants executed a number of mortgages on the real property in Snohomish County to third parties who would have otherwise had priority if the plaintiff had not promptly protected its creditor interest as it did.

■ After studying the language in *Fuentes* and *Mitchell*, we are convinced that the facts in this case provide the very kind of "extraordinary situation" contemplated by the United States Supreme Court in its enunciation of the exception to the rule requiring notice and an opportunity to be heard prior to any deprivation of a "significant property interest." First, the attachment of the real property was necessary to further an overriding state interest in protecting creditors from fraudulent or wrongful disposal of property by a debtor. Second, there was a special need for very prompt action under the circumstances of this case. Third, RCW 7.12.020(6) and (7) have been drawn to accommodate such an extraordinary situation when the rights of the creditor need protection from the fraudulent or wrongful disposal of property by a debtor under unusual circumstances requiring prompt action.

We, therefore, hold that the present case comes within

the ambit of the exception to the rule of *Fuentes*, and conclude that the defendant's constitutional right to procedural due process has not been violated under the facts of this case.

Furthermore, the instant case can be distinguished on the facts from *Fuentes*, and we believe is controlled by the decision of *McKay v. McInnes*, 279 U.S. 820, 73 L. Ed. 975, 49 S. Ct. 344 (1928). In *McKay*, as in the present case, the attachment without notice at the commencement of an action to collect a debt was to *secure a lien* on real property so that it might be levied upon in satisfaction of the debt after judgment had been obtained. *Fuentes* involved the attachment and *seizure of personal property* without notice in an action prior to judgment. The court in *Mitchell v. W.T. Grant Co., supra,* recognized the validity of the *McKay* case. It stated on pages 613-14:

> Furthermore, based on *Ownbey* [*Ownbey v. Morgan*, 256 U.S. 94, 65 L. Ed. 837, 41 S. Ct. 433 (1921)] and *Coffin* [*Coffin Bros. & Co. v. Bennett*, 277 U.S. 29, 72 L. Ed. 768, 48 S. Ct. 422 (1928)], the Court later sustained the constitutionality of the Maine attachment statute. *McKay v. McInnes*, 279 U.S. 820 (1929). In that case, a nonresident of Maine sued in the Maine courts to collect a debt from a resident of the State. As permitted by statute, and as an integral part of instituting the suit, the creditor attached the properties of the defendant, without notice and without judicial process of any kind. In sustaining the procedure, the Maine Supreme Court, 127 Me. 110, 141 A. 699 (1928), described the attachment as designed to create a lien for the creditor at the outset of the litigation. "Its purpose is simply to secure to the creditor the property which the debtor has at the time it is made so that it may be seized and levied upon in satisfaction of the debt after judgment and execution may be obtained." *Id.,* at 115, 141 A., at 702. The attachment was deemed "part of the remedy provided for the collection of the debt" *ibid.*, and represented a practice that "had become fully established in Massachusetts, part of which Maine was at the time of the adoption of the Federal Constitution." *Id.,* at 114, 141 A., at 702. The judgment of the

Maine court was affirmed without opinion citing *Ownbey* and *Coffin*.

In *Sniadach v. Family Finance Corp., supra* [395 U.S. 337, 23 L. Ed. 2d 349, 89 S. Ct. 1820 (1969)], it was said that *McKay* and like cases dealt with "[a] procedural rule that may satisfy due process for attachments in general" but one that would not "necessarily satisfy procedural due process in every case," nor one that "gives necessary protection to all property in its modern forms." 395 U.S., at 340. *Sniadach* involved the prejudgment garnishment of wages—"a specialized type of property presenting distinct problems in our economic system."

(The court then proceeded to distinguish *Sniadach* from *McKay* and *Fuentes* from *Mitchell*.)

▮ Our statute, RCW 7.12.020 (6) and (7), is similar to and substantially more comprehensive than the Maine statute in the *McKay* case, and we therefore further hold on the authority of *McKay* that the attachment in this case without notice or hearing, to secure a lien upon the defendants' real property for the creditor-plaintiff at the outset of this litigation, was valid.

The order of the trial court denying the motion to discharge the writ of attachment is affirmed.

HALE, C.J., and FINLEY, ROSELLINI, HAMILTON, STAFFORD, WRIGHT, UTTER, and BRACHTENBACH, JJ., concur.

Petition for rehearing denied April 3, 1975.