[No. 20211-1-I.   Division One.   February 13, 1989.]

PAY 'N SAVE CORPORATION, *Respondent,* v. KENNETH R. EADS, ET AL, *Appellants.*

---

444

*Michael D. Hunsinger* and *Neubauer & Hunsinger,* for appellants.

*Dale E. Kremer* and *Lane, Powell, Moss & Miller,* for respondent.

WINSOR, J.—Kenneth and Jane Doe Eads (Eads) appeal from a judgment awarding damages to Pay 'N Save Corporation in connection with a stock purchase agreement. Eads contends that the trial court erred in: (1) dismissing the counterclaims for malicious prosecution and slander of title; (2) holding that Pay 'N Save's prejudgment writ of attachment was not wrongfully obtained; (3) adopting an audited figure as the measure of damages; (4) prohibiting the introduction of evidence regarding the value of Northwestern Drug Company (NWD) to Pay 'N Save; and (5) ruling that Pay 'N Save had not waived its right to contend that interim statements were not prepared in accordance with

generally accepted accounting principles. Pay 'N Save cross-appeals from that portion of the judgment denying it prejudgment interest.

The facts pertinent to the published portion of this opinion are as follows: Eads owned 100 percent of the outstanding common stock of NWD. On December 13, 1983, Eads and Pay 'N Save signed a stock purchase agreement. Pay 'N Save initiated an action against Eads for breach of contract on August 13, 1984.

On October 9, 1986, Pay 'N Save, upon receiving notice of Eads' efforts to obtain a loan secured by a second deed of trust on the warehouse he rented to Pay 'N Save, filed a lis pendens against the property. In response, Eads filed a motion asking that the lis pendens be removed, or, in the alternative, allowing him to amend his pleadings to include counterclaims for slander of title and malicious prosecution based upon the lis pendens.

Before the court ruled on Eads' motion, Pay 'N Save obtained an ex parte order authorizing the issuance of a prejudgment writ of attachment on the same property. The affidavit for attachment sets forth three grounds for the issuance of the writ: (1) Eads was living out of state; (2) Pay 'N Save's belief that Eads had already, or would soon, remove some of his property from Washington, with intent to delay or defraud creditors; and (3) the claim was based upon a written contract. On October 23, 1986, Eads filed a motion for an order discharging the writ of attachment or, in the alternative, allowing him to amend his pleadings to include a counterclaim for wrongful issuance of a prejudgment writ of attachment.

Eads' motions to amend his pleadings were granted. The motion to remove the lis pendens was denied. The motion to discharge the prejudgment writ of attachment was denied because the court found that there was reasonable probability that Pay 'N Save's claim was valid, that Eads' "just credits and offsets" did not exceed Pay 'N Save's claim, and that there existed a question as to the residency of Eads.

On the first day of trial, November 17, 1986, Pay 'N Save moved to strike Eads' counterclaims. The trial judge granted both motions. Eads appeals both rulings.

The issues on appeal are: (1) whether the filing of a lis pendens can give rise to a claim for slander of title or malicious prosecution; (2) whether the prejudgment writ of attachment was wrongfully obtained; (3) whether the trial court erred in finding that Pay 'N Save did not waive its right to challenge the accuracy of the interim statements; (4) whether the trial court erred in its determination of damages on the breach of warranty theory; and (5) whether prejudgment interest should have been awarded.[1] We answer these questions in Pay 'N Save's favor and remand for entry of prejudgment interest.

### MALICIOUS PROSECUTION AND SLANDER OF TITLE

Eads asserted counterclaims for malicious prosecution and slander of title based upon Pay 'N Save's filing a notice of lis pendens on his warehouse property. Lis pendens is authorized by RCW 4.28.320. The statute permits the plaintiff in an action "affecting the title to real property" to file a notice of the pendency of the action with the auditor of the county in which the property is situated. Lis pendens has the effect of providing constructive notice of the action to a subsequent purchaser or encumbrancer.

Eads contends that the lis pendens was improper because this lawsuit did not affect title to real property. He claims the trial court erred in dismissing his claims for malicious prosecution and slander of title.[2]

---

[1] Facts and law pertinent to issues (3), (4) and (5) are in the unpublished portion of this opinion.

[2] Eads also claims that the trial judge was barred by King County Superior Court Local Rule 7(b)(1)(A) from considering Pay 'N Save's motion to dismiss Eads' counterclaims for malicious prosecution and slander of title, because a different judge had granted Eads' motion to amend his complaint. We find no merit in this argument.

## A. Malicious Prosecution

We affirm the trial court's dismissal of Eads' malicious prosecution claim because he failed to fulfill Washington's common law requirements:

> To maintain an action for malicious prosecution, the plaintiff must allege and prove (1) that the prosecution claimed to have been malicious was instituted or continued by the defendant; (2) that there was want of probable cause for the institution or continuation of the prosecution; (3) that the proceedings were instituted or continued through malice; (4) that the proceedings terminated on the merits in favor of the plaintiff, or were abandoned; and (5) that the plaintiff suffered injury or damage as a result of the prosecution.

*Peasley v. Puget Sound Tug & Barge Co.,* 13 Wn.2d 485, 497, 125 P.2d 681 (1942). The Legislature has altered the common law requirements slightly to permit a defendant to assert a counterclaim for malicious prosecution in the principal action. RCW 4.24.350.

Washington has adopted a restrictive view of the "injury or damage" necessary to satisfy condition (5). *Gem Trading Co. v. Cudahy Corp.,* 92 Wn.2d 956, 962–63, 603 P.2d 828 (1979). The plaintiff must allege and submit proof of arrest of his person or seizure of his property. *Gem Trading Co.,* at 965; *Fenner v. Lindsay,* 28 Wn. App. 626, 625 P.2d 180 (1981). Washington has not yet decided whether the filing of a lis pendens constitutes a seizure of property.

Only one adherent of the restrictive view, Pennsylvania,[3] has ruled on the issue.[4] It held that filing a lis pendens did not constitute a seizure. *Blumenfeld v. R.M. Shoemaker*

---

[3] Pennsylvania statutorily abolished the arrest or seizure requirement in 1981. *Blumenfeld v. R.M. Shoemaker Co.,* 286 Pa. Super. 540, 429 A.2d 654, 656–57 (1981).

[4] Eads cites cases from other jurisdictions, *e.g., Albertson v. Raboff,* 46 Cal. 2d 375, 295 P.2d 405 (1956), as support for his contention that a lis pendens will support a claim for malicious prosecution. None of those jurisdictions adhere to the restrictive view, however, so they are not persuasive.

*Co.,* 286 Pa. Super. 540, 429 A.2d 654, 657–58 (1981). The *Blumenfeld* court stated:

> [A]lthough a lis pendens may temporarily cloud someone's title and therefore make encumbrancing or conveyancing difficult, it is nevertheless clear that it does not even establish a lien upon the affected property. *A fortiori,* a lis pendens does not constitute a seizure of property within the purview of the English rule. Consequently, appellees failed to establish a cause of action for either malicious use of process or abuse of process.

(Footnotes omitted.) *Blumenfeld,* at 546–47.

Pennsylvania's analysis is persuasive. We hold that a lis pendens does not constitute a seizure of property. *Accord, Debral Realty, Inc. v. DiChiara,* 383 Mass. 559, 563, 420 N.E.2d 343, 347 (1981) ("The filing of a memorandum of lis pendens does not result in seizure of the property or dispossession of the property owner."). Consequently, Eads failed to establish a cause of action for malicious prosecution.

### B. Slander of Title

We also affirm the trial court's dismissal of Eads' slander of title claim. The necessary elements of a slander of title action are that the words: (1) must be false; (2) must be maliciously published; (3) must be spoken with reference to some pending sale or purchase of the property; (4) must result in a pecuniary loss or injury to the plaintiff; and (5) must be such as to defeat the plaintiff's title. *Brown v. Safeway Stores, Inc.,* 94 Wn.2d 359, 375, 617 P.2d 704 (1980). At oral argument, Eads conceded that he cannot prove the third element.

### PREJUDGMENT WRIT OF ATTACHMENT

In Washington, if a plaintiff meets the statutory requirements s/he may, at the time of commencing an action, or at any time afterward before judgment, have the property of the defendant attached as security for the satisfaction of such judgment as s/he may recover. Former RCW 7.12.010. Plaintiffs must file an affidavit specifying: (1) the amount

of the debt over and above all just credits and offsets; (2) that the attachment is sought in good faith; and (3) that at least 1 of the 10 statutorily specified grounds is present.[5] Former RCW 7.12.020; *Brown v. Peoples Nat'l Bank,* 39 Wn.2d 776, 780, 238 P.2d 1191 (1951).

When personal property is attached it is seized by the sheriff, and the debtor is deprived of its use. Former RCW 7.12.130(2). Attachment of real property in Washington is effected by filing a copy of the writ of attachment, together with a description of the property, with the county auditor. Former RCW 7.12.130(1). The real property is not seized.

█ The right to use of the State's power to seize goods before a final judgment in order to protect the interest of a creditor is not here questioned. *Fuentes v. Shevin,* 407 U.S. 67, 96, 32 L. Ed. 2d 556, 92 S. Ct. 1983 (1972). Due process, however, requires a hearing aimed at establishing the probable validity of the claim against the alleged debtor before s/he can be *deprived of his or her property. Fuentes,* at 97. A prehearing is not necessary in "extraordinary situations," such as where a creditor can make a showing that a debtor

---

[5]The 10 statutory grounds for attachment are:

"(1) That the defendant is a foreign corporation; or

"(2) That the defendant is not a resident of this state; or

"(3) That the defendant conceals himself so that the ordinary process of law cannot be served upon him; or

"(4) That the defendant has absconded or absented himself from his usual place of abode in this state, so that the ordinary process of law cannot be served upon him; or

"(5) That the defendant has removed or is about to remove any of his property from this state, with intent to delay or defraud his creditors; or

"(6) That the defendant has assigned, secreted, or disposed of, or is about to assign, secrete, or dispose of, any of his property, with intent to delay or defraud his creditors; or

"(7) That the defendant is about to convert his property, or a part thereof, into money, for the purpose of placing it beyond the reach of his creditors; or

"(8) That the defendant has been guilty of a fraud in contracting the debt or incurring the obligation for which the action is brought; or

"(9) That the damages for which the action is brought are for injuries arising from the commission of some felony; or

"(10) That the object for which the action is brought is to recover on a contract, express or implied." Former RCW 7.12.020.

will destroy or conceal the property if the court does not act immediately. *Fuentes,* at 90–91, 93.

Pay 'N Save obtained its writ of attachment in an ex parte proceeding. It alleged three separate statutory grounds: former RCW 7.12.020(2), (5), (10). The writ was levied against real property. Eads contends that the ex parte proceeding violated his constitutional rights of due process because a hearing was not held before the writ was issued. He argues that the facts do not constitute an extraordinary circumstance.

Although Pay 'N Save alleged in the language of RCW 7.12.020(5) that Eads was about to remove his property from Washington to delay or defraud his creditors, the affidavit does not set forth any facts in support of this allegation. The appellate record, moreover, contains no evidence to support Pay 'N Save's allegation that Eads sought a second deed of trust on the warehouse property to defraud or delay his creditors. Consequently, we are unable to hold that the instant case falls within the extraordinary circumstances exception of *Fuentes v. Shevin, supra. See Thompson v. DeHart,* 84 Wn.2d 931, 935, 530 P.2d 272 (1975). We must therefore address the issue of whether a prehearing was necessary before prejudgment attachment of real property.

Former RCW 7.12 made no express provision for a prejudgment attachment hearing.[6] The court created a procedure to satisfy due process in prejudgment attachment in *Rogoski v. Hammond,* 9 Wn. App. 500, 513 P.2d 285 (1973). In that case, the plaintiff brought an action to collect unpaid rent pursuant to a contract. A show cause hearing was conducted before the trial court issued the writ of attachment which was levied against the tenant's inventory and equipment. The Court of Appeals upheld the use of this procedure, and held that due process requires a prehearing when attachment is sought on the ground of claim

---

[6]RCW 7.12 was amended and recodified in May of 1987 as RCW 6.25. The revised statute provides rules regarding notice and hearing. *See* RCW 6.25.070.

on a contract pursuant to former RCW 7.12.020(10), because this ground does not constitute an extraordinary circumstance. *Rogoski,* at 503–04.

*Thompson v. DeHart, supra,* addressed the need for a prehearing when attachment is sought on real property on the grounds specified in former RCW 7.12.020(6) and (7). In *Thompson,* the writ of attachment was obtained in an ex parte proceeding. 84 Wn.2d at 934. The Washington Supreme Court held that the procedure was constitutionally valid, noting that former RCW 7.12.020(6) and (7) are narrowly drawn and fall within the extraordinary situation exception set forth in *Fuentes v. Shevin, supra; Thompson,* 84 Wn.2d at 937–38. But, the court also held in the alternative that since the property attached was real property, the attachment affecting only a lien fell short of a seizure that is constitutionally prohibited. *Thompson,* at 938; *accord, In re Northwest Homes of Chehalis, Inc.,* 526 F.2d 505 (9th Cir. 1975) (ex parte procedure under RCW 7.12 to secure a writ of attachment on real estate in a nonextraordinary situation did not violate due process because the execution of the writ did not deprive the defendant of the ownership, actual use or physical possession of the attached property), *cert. denied,* 425 U.S. 907, 47 L. Ed. 2d 758, 96 S. Ct. 1501 (1976).

We find the nature of the attached property, rather than the question of which of the statutory grounds was relied upon, to be controlling here. Because real estate was attached, Eads was not "deprived" of the actual use or possession of the property. *See Fuentes,* 407 U.S. at 97. Accordingly, we hold that the procedure used here did not violate due process. The trial court properly dismissed Eads' counterclaim for wrongful attachment.

The remainder of this opinion has no precedential value. Therefore, it will not be published, but has been filed for public record. *See* RCW 2.06.040; CAR 14.

SCHOLFIELD and WEBSTER, JJ., concur.