[No. 60183-6.    En Banc.    May 19, 1994.]

MICHAEL RORVIG, ET AL, *Petitioners*, v. JOEL DOUGLAS,
ET AL, *Respondents*.

*Philip E. Rosellini* and *Jeffrey D. Thomas*, for petitioners.
*Reed McClure*, by *William R. Hickman* and *Marilee C. Erickson*, for respondents.

JOHNSON, J. — Petitioners were denied recovery of the legal expenses incurred in the quiet title portion of their successful slander of title action. Legal expenses, including attorney fees, incurred in clearing the slandered title have not been recoverable as damages in accordance with the rule set out in *McGuinness v. Hargiss*, 56 Wash. 162, 105 P. 233 (1909). Petitioners request this court to overrule *McGuinness*

and hold such fees are recoverable as special damages. Respondents have cross-petitioned the ruling of the Court of Appeals affirming the trial court's findings that the parties did not have an enforceable contract and the elements of slander of title had been met, and the trial court's method of calculating damages. We hold in a successful slander of title action, recoverable damages include attorney fees. Further, we affirm the Court of Appeals on the issues raised in the cross petition.

Petitioners Pam and Michael Rorvig purchased three unimproved lots located adjacent to a subdivision owned and developed by the Respondents, Barbara and Joel Douglas. The Douglases had bid on the unimproved lots, hoping to include them within their development. However, the Rorvigs submitted the winning bid and signed a purchase and sale agreement for the property on August 8, 1989.

Shortly thereafter, the Douglases began pressuring the Rorvigs to abandon the purchase. The Douglases suggested the situation be resolved by the parties entering into a joint development agreement for the property. The Rorvigs began negotiations with the Douglases.

The Douglases submitted several drafts of agreements to the Rorvigs. After rejecting these, the Rorvigs prepared their own agreement. The agreement provided for cooperation in the vacation of an unimproved city street, for performance by the Douglases of site development, and for payment by the Rorvigs to the Douglases of development costs on a per-lot basis. The agreement also stated that a memorandum of the contract would be recorded with the county auditor.

On September 25, 1989, Pam Rorvig signed the agreement. Michael Rorvig then took the agreement to the Douglases' office. After Joel Douglas reviewed the agreement, he and Michael Rorvig agreed to two changes, which they inserted into the agreement and initialed. They both signed the agreement. Rorvig then presented the agreement to Barbara Douglas. She requested some time to review the

document before signing it. Michael Rorvig left the agreement with Mrs. Douglas.

Sometime after Michael Rorvig left the office, the Douglases made three material changes to the agreement. The changes would have increased the Rorvigs' obligation under the contract by $15,000, and would have allowed the Douglases to opt out of providing various improvements if they could not agree to terms with the Rorvigs. Barbara Douglas signed the agreement, and both Douglases initialed the changes. Beside their own initials, the Douglases marked spaces for the Rorvigs to insert their initials.

The Rorvigs received the contract back the next day. They found the Douglases' changes unacceptable. When a Douglas employee contacted Rorvig a week later to find out the Rorvigs' response, Michael Rorvig said he and his wife were rejecting the Douglases' counteroffer.

During a series of telephone calls between the parties, Michael Rorvig repeatedly denied they had an agreement. Mr. Douglas asserted an agreement existed. At the same time, he continued to propose a variety of new agreements and to remind the Rorvigs that litigation was expensive. The Douglases prepared and recorded a memorandum of agreement on the property despite the Rorvigs' contention no finalized agreement existed.

Not long after the Douglases recorded the memorandum, David Edelstein, a local contractor, submitted an earnest money agreement to the Rorvigs offering to purchase the three lots. Rorvig informed Edelstein of the Douglas memorandum. After verifying with the title company that the Rorvigs could not provide clear title, Edelstein withdrew his offer.

On December 26, 1989, the Rorvigs filed suit. They requested the court quiet title in the Rorvigs, and award damages for slander of title. The Douglases counterclaimed for enforcement of the memorandum.

At trial, Judge Moynihan held the memorandum was not an enforceable contract. He further held the Douglases were

liable for slander of title, and awarded damages of $7,406.26. The trial court denied the Rorvigs' request for attorney fees, other than statutory fees of $125.

Both parties appealed. In an unpublished opinion, the Court of Appeals affirmed the judgment in all respects. On the issue of awarding attorney fees for the quiet title portion of the action, both the trial court and the Court of Appeals felt bound by *McGuinness v. Hargiss*, 56 Wash. 162, 105 P. 233 (1909), which held attorney fees are not recoverable as costs or as damages in a slander of title action.

I

Initially, we consider the issues raised in the Douglases' cross petition. The Douglases make three arguments: (1) the trial court erred in holding no contract was formed between the parties; (2) the trial court erred in holding Petitioners had established all the elements of slander of title; and (3) the trial court erred in the calculation of damages. First we consider whether the trial court erred in concluding no contract was formed between the parties.

■■ It is a basic rule of contract formation that "[a]n expression of assent that changes the terms of the offer in any material respect may be operative as a counteroffer; but it is not an acceptance and consummates no contract". *Blue Mt. Constr. Co. v. Grant Cy. Sch. Dist. 150-204*, 49 Wn.2d 685, 688, 306 P.2d 209 (1957). On the other hand, an acceptance that requests modification of terms may consummate a contract unless the additional terms are conditions of acceptance. Such an acceptance must be unequivocal. Restatement (Second) of Contracts § 61 comment a (1981).

The trial court found a contract had not been formed between the Douglases and the Rorvigs because the handwritten modifications made by the Douglases constituted a counteroffer which the Rorvigs rejected. The Douglases disagree, asserting they accepted the Rorvig contract as modified on September 25, 1989, they returned it the next day with proposed changes, and the additional terms were not conditions of acceptance.

The evidence, however, does not support the Douglases' contentions. Although the Douglases returned the contract with a cover letter stating, "we suggest a minimum of four tracts", that change and other changes were actually written into the contract and initialed by the Douglases. Therefore, the "suggested" changes were actually incorporated into the proposed contract. These changes constituted a counteroffer and not an unequivocal acceptance of the Rorvigs' offer. The Douglases' conduct confirmed that no agreement had been reached. After learning the Rorvigs had rejected their proposal, the Douglases proposed other agreements. In addition, during a telephone conversation with Michael Rorvig, Mr. Douglas stated, "I suppose we don't have an agreement, unless you — unless you and Pam agree to it, but that could take $20,000 and two years for the Court to decide". Report of Proceedings, at 74.

Even if the Douglases' changes are viewed as requests for changes to the contract rather than conditions of acceptance, no contract was formed because there was no unequivocal acceptance of the original terms. When Michael Rorvig left the Douglases' office on September 25, 1989, Barbara Douglas had not signed the contract and Michael Rorvig had no clear indication that she would assent to it. It is clear from the facts that her approval was necessary before any offer could be accepted and, when the proposed contract was left with her, she indicated she needed some time to review it. The next day when the Douglases returned the contract with additional changes, no clear statement indicated the Rorvigs were accepting its original terms. Therefore, the trial court was correct in holding no contract was formed because there was never unequivocal, mutual assent to any one contract proposal.

■ Next, the Douglases assert the court erred in concluding the Rorvigs established all the elements of slander of title. Slander of title is defined as: (1) false words; (2) maliciously published; (3) with reference to some pending sale or purchase of property; (4) which go to defeat plaintiff's title; and (5) result in plaintiff's pecuniary loss. *Pay 'N Save*

*Corp. v. Eads*, 53 Wn. App. 443, 448, 767 P.2d 592 (1989) (citing *Brown v. Safeway Stores, Inc.*, 94 Wn.2d 359, 375, 617 P.2d 704 (1980)).

■ The Douglases contend the evidence did not establish the element of falsity. The Douglases cite several cases from other jurisdictions which hold the good faith recording of an unenforceable agreement does not render an agreement false for purposes of slander of title. However, the cases cited by Respondents involved honestly held assertions made in good faith. In this case, the record supports the trial court's finding that the Douglases recorded the memorandum of agreement, which falsely declared a valid contract existed, even though the Douglases knew no agreement had been reached. The element of falsity was sufficiently established.

The Respondents also contend the Rorvigs failed to establish the element of "pending sale". They rely primarily on *Clarkston Comm'ty Corp. v. Asotin Cy. Port Dist.*, 3 Wn. App. 1, 472 P.2d 558 (1970). In *Clarkston*, no negotiations or offers to purchase had taken place when the alleged slander occurred. The court pointed out that the plaintiff had a mere expectation that a potential buyer would begin negotiations for the property, and thus had failed to establish the pending sale element. *Clarkston*, 3 Wn. App. at 4.

■ The Douglases argue Edelstein's earnest money agreement is analogous to the anticipatory negotiations in *Clarkston*. However, the evidence produced at trial shows the Edelstein offer went beyond a mere expectation of negotiations. Edelstein made an offer to purchase the property, which he withdrew only when the title company verified the existence and effect of the Douglases' memorandum. Further, Edelstein testified he would have purchased the property except for the encumbrance on the title.

■ The Douglases also contend the trial court erred in finding the element of malice was established. The element of malice is met when the slanderous statement is not made in good faith or is not prompted by a reasonable belief in its veracity. *Brown v. Safeway Stores, Inc.*, 94 Wn.2d 359, 375,

617 P.2d 704 (1980). The evidence at trial supported the court's finding that the Douglases were prompted to file the memorandum for the specific purpose of preventing the proposed sale of the property and with full knowledge no agreement existed.

■ Finally, the Respondents argue the trial court's method of calculating damages was improper. The trial court heard evidence and awarded damages based on the interest incurred on the Petitioners' mortgage debt while the memorandum recorded by the Douglases remained on the title. The Douglases offered no evidence to support an alternate method of calculating damages. Evidence of damages is sufficient if it affords a reasonable basis for estimating the loss and does not subject the trier of fact to mere speculation or conjecture. *Haner v. Quincy Farm Chems., Inc.*, 97 Wn.2d 753, 757, 649 P.2d 828 (1982). Based on the evidence presented, the trial court's method provided a reasonably certain basis for determining damages under the facts of this case.

II

Petitioners request we overrule *McGuinness v. Hargiss*, 56 Wash. 162, 105 P. 233 (1909), which held "attorney's fees, either as damages or costs, other than statutory, are not recoverable". *McGuinness*, 56 Wash. at 164-65. We revisit the attorney fees argument for the first time in 85 years. A review of analogous cases, recent decisions in other jurisdictions, and the Restatement (Second) of Torts, persuades us that *McGuinness* represents an outdated approach. Therefore, we hold attorney fees are recoverable as special damages in a slander of title action.

■ It is well established that we adhere to the American rule, which states that absent a contract, statute, or recognized ground of equity, the prevailing party does not recover attorney fees as costs of litigation. *Haner*, 97 Wn.2d at 757. Nevertheless, we have also recognized "certain circumstances" where attorney fees should be recovered as damages. *State ex rel. Macri v. Bremerton*, 8 Wn.2d 93, 113, 111 P.2d 612 (1941).

In malicious prosecution and wrongful attachment or garnishment, we have held attorney fees are recoverable as special damages. In malicious prosecution, it has long been the rule that damages include the attorney fees for the underlying action made necessary by the defendant's wrongful act. *Aldrich v. Inland Empire Tel. & Tel. Co.*, 62 Wash. 173, 176-77, 113 P. 264 (1911). Similarly, in wrongful attachment or garnishment actions, and in actions to dissolve a wrongful temporary injunction, attorney fees are a "necessary expense incurred" in relieving the plaintiff of the wrongful attachment or temporary injunction, and are recoverable. *James v. Cannell*, 135 Wash. 80, 83, 237 P. 8 (1925), *aff'd*, 139 Wash. 702 (1926); *Cecil v. Dominy*, 69 Wn.2d 289, 294, 418 P.2d 233 (1966).

■ Slander of title is analogous to these actions. It is the defendant who by intentional and calculated action leaves the plaintiff with only one course of action: that is, litigation. In malicious prosecution, wrongful attachment, and slander of title, the defendants actually know their conduct forces the plaintiff to litigate. In addition, similar to malicious prosecution and wrongful attachment, actual damages are difficult to establish and often times are minimal in slander of title. Fairness requires the plaintiff to have some recourse against the intentional malicious acts of the defendant.

The majority of jurisdictions that have considered the question in recent years have adopted this rule. *See, e.g., Rayl v. Shull Enters., Inc.*, 108 Idaho 524, 700 P.2d 567 (1984); *Summa Corp. v. Greenspun*, 98 Nev. 528, 655 P.2d 513 (1982); *Rogers v. Home Invs. Fund*, 10 Ill. App. 3d 840, 295 N.E.2d 85 (1973); *Dowse v. Doris Trust Co.*, 116 Utah 106, 208 P.2d 956 (1949). The trend is to recognize that attorney fees and other legal expenses incurred in clearing the disparaged title are recoverable as damages in the common law action of slander of title. James O. Pearson, Jr., Annotation, *What Constitutes Special Damages in Action for Slander of Title*, 4 A.L.R.4th 532, 560 (1981).

Furthermore, the Restatement (Second) of Torts supports allowing recovery of attorney fees in a slander of title

action. It describes slander of title as a form of the general tort of publication of an injurious falsehood. Thus, the rules on liability for the publication of an injurious falsehood also apply to slander of title. Restatement (Second) of Torts § 633 comment b (1977). The Restatement provides:

(1) The pecuniary loss for which a publisher of injurious falsehood is subject to liability is restricted to

(a) the pecuniary loss that results directly and immediately from the effect of the conduct of third persons, including impairment of vendibility or value caused by disparagement, and

(b) the expense of measures reasonably necessary to counteract the publication, *including litigation to remove the doubt cast upon vendibility or value by disparagement.*

(Italics ours.) Restatement (Second) of Torts § 633. Attorney fees incurred in removing the cloud from the title and restoring vendibility are necessary expenses of counteracting the effects of the slander. Restatement (Second) of Torts § 633.

### III

We affirm on the issues of sufficiency of evidence and calculation of damages raised by the Douglases' cross petition. We reverse the trial court on the issue of attorney fees, and remand for the purpose of determining and awarding as damages the attorney fees necessarily incurred in removing the cloud from the Rorvigs' title.

UTTER, BRACHTENBACH, SMITH, and GUY, JJ., concur.

DOLLIVER, J. (concurring in part, dissenting in part) — I concur in the conclusions reached by the majority in section I of its opinion. I cannot concur, however, with its decision to overrule *McGuinness v. Hargiss*, 56 Wash. 162, 105 P. 233 (1909) and make attorney fees recoverable in a slander of title action. As the majority recognizes, Washington has long followed the American rule that attorney fees are not recoverable as costs of litigation absent a contract, statute, or recognized ground of equity. Majority, at 861. The major-

ity, however, abandons this solid precedent and uses common law to expand the availability of attorney fees. We have consistently left such decisions to the Legislature, and until the Legislature acts to change the current rule, I would adhere to the long-established precedent that attorney fees are not recoverable in a slander of title action. Therefore, I dissent.

ANDERSEN, C.J., and MADSEN, J., concur with DOLLIVER, J.