160 F.3d 528
 98 Daily Journal D.A.R. 11,267,
98 Daily Journal D.A.R. 12,271
TRI-STATE DEVELOPMENT, LTD., a Washington corporation,
Plaintiff-Appellant,
v.
David A. JOHNSTON; Gayle Johnston; John H. Shields, Pierce
County Sheriff, Defendants-Appellees.
Attorney General of the State of Washington,
Defendant-Intervenor Appellee.
 No. 97-35420.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 10, 1998.
Decided Oct. 30, 1998.
 
 Jeffrey P. Helsdon, McFerran & Helsdon, P.S., Tacoma, Washington, for plaintiff-appellant.
 Jill Guernsey, Deputy Prosecuting Attorney, Pierce County, Tacoma, Washington, for defendant-appellee John H. Shields, Pierce County Sheriff.
 Christine O. Gregoire, Attorney General of Washington, James K. Pharris, Senior Assistant Attorney General, Olympia, Washington, for defendant-intervenor-appellee Attorney General of the State of Washington.
 No appearance for defendants-appellees David A. Johnston and Gayle Johnston.
 Appeal from the United States District Court for the Western District of Washington; Robert J. Bryan, District Judge, Presiding. D.C. No. CV-96-05707 RJB.
 Before: CANBY, JR. and TASHIMA, Circuit Judges, and EZRA, District Judge.*
 TASHIMA, Circuit Judge:
 
 
 1
 Tri-State Development, Ltd. (Tri-State) appeals from the district court's order granting summary judgment to David and Gayle Johnston, and John Shields. We reverse.
 
 I. BACKGROUND
 
 2
 Following a series of contractual disputes regarding the construction of their home, the Johnstons filed suit in Washington state court against Tri-State alleging breach of contract and breach of the implied warranty of habitability. Relying on RCW 6.25.070(2), which allows the attachment of real property without prior notice and a hearing, the Johnstons also filed an ex parte motion for the issuance of a writ of attachment in order to attach real property owned by Tri-State.[1] Based on the pleadings and an affidavit filed by David Johnston, the Washington Superior Court ordered the issuance of the writ and, pursuant thereto, the sheriff attached the property. Tri-State did not receive notice of the Johnstons' complaint or of the motion for the issuance of the writ until after the writ had been issued.
 
 
 3
 Rather than asserting its right under RCW 6.25.070(3) to an early postattachment hearing, Tri-State filed this action in the district court against the Johnstons and Shields, the sheriff who attached the property. Tri-State sought injunctive relief, compensatory and punitive damages under 42 U.S.C. § 1983, and a declaration that RCW 6.25.070 violates the due process clause of the Fourteenth Amendment. The district court denied Tri-State's motion for partial summary judgment, then invited the State of Washington to intervene. It subsequently granted summary judgment in favor of the Johnstons and Shields, concluding that Tri-State had failed to show that the statute was unconstitutional.
 
 II. STANDARD OF REVIEW
 
 4
 The district court's grant of summary judgment is reviewed de novo. Blue Ridge Ins. Co. v. Stanewich, 142 F.3d 1145, 1147 (9th Cir.1998). Here, the facts underlying the district court's conclusion that the statute is not unconstitutional are not in dispute; therefore, the only question we must determine is whether the district court correctly applied the law. Id. We review de novo the district court's ruling on the constitutionality of a state statute. Bland v. Fessler, 88 F.3d 729, 732 (9th Cir.1996), cert. denied, --- U.S. ----, 117 S.Ct. 513, 136 L.Ed.2d 403 (1996).
 
 III. DISCUSSION
 
 5
 In Connecticut v. Doehr, 501 U.S. 1, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991), the Supreme Court held that a Connecticut statute that "authorizes prejudgment attachment of real estate without prior notice or hearing, without a showing of extraordinary circumstances, and without a requirement that the person seeking the attachment post a bond" violated the due process clause of the Fourteenth Amendment.[2] Id. at 4, 111 S.Ct. 2105. In Doehr, John DiGiovanni sought an attachment of Doehr's home in conjunction with a civil suit he was filing against Doehr for an alleged assault and battery.
 
 
 6
 The Court applied the three-part inquiry of Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), in order to determine whether Connecticut's attachment statute satisfied due process. See Doehr, 501 U.S. at 10-11, 111 S.Ct. 2105. First, the court must consider the private interest that will be affected by the prejudgment action. Second, the court examines the risk of erroneous deprivation and the probable value of additional safeguards. Third, in the case of a dispute between private parties rather than between an individual and the government, the court must consider the interest of the party seeking the prejudgment remedy, with "due regard for any ancillary interest the government may have in providing the procedure or forgoing the added burden of providing greater protections." Id. at 11, 111 S.Ct. 2105.
 
 
 7
 Applying the Mathews factors, the Court determined that Connecticut's procedures inadequately protected Doehr's due process rights. First, the Court stated that attachment affects significant property interests, despite the State's argument that attachment did not involve a complete, physical, or permanent deprivation of real property. Id. at 11-12, 111 S.Ct. 2105. The Court then discussed the inadequacy of the standard of "probable cause," whose meaning was unclear even to the State, to guard against the risk of erroneous deprivation. Id. at 13-14, 111 S.Ct. 2105. If probable cause only required the plaintiff to state a facially valid complaint, the risk of erroneous deprivation was substantial, as it would allow "deprivation of the defendant's property when the claim would fail to convince a jury, [or] when it rested on factual allegations that were sufficient to state a cause of action but which the defendant would dispute." Id. Even if probable cause required a finding of probable cause that the plaintiff would receive a favorable judgment, the Court reasoned that a judge could not make a realistic assessment of the likelihood of the action's success based on only one side's version of an incident such as an alleged assault. Id. at 14, 111 S.Ct. 2105. Finally, the Court concluded that DiGiovanni's interests were minimal. He had no existing interest in the property and attached it only "to ensure the availability of assets to satisfy his judgment if he prevailed on the merits of his action." Id. at 16, 111 S.Ct. 2105. Nor were there any allegations that Doehr was going to take any action that would have rendered his property unavailable to satisfy a judgment, an exigent circumstance that would have permitted attachment without notice and a hearing. Id.
 
 
 8
 Although Doehr held only that the Connecticut statute was unconstitutional "as applied to [that] case," id. at 4, 111 S.Ct. 2105, both the facts and the statute at issue in this case are virtually indistinguishable from those in Doehr. Like the Connecticut statute in Doehr, the Washington statute allows prejudgment attachment without prior notice or a hearing, requiring only a finding of "probable cause to believe the allegations of plaintiff's affidavit." RCW 6.25.070(2). Thus, RCW 6.25.070(2) could potentially allow deprivation of the defendant's property when the plaintiff has merely stated allegations sufficient to state a cause of action, but which the defendant would dispute.
 
 
 9
 Also similar to the Connecticut statute, RCW 6.25.070(2) does not require a showing of extraordinary circumstances, such as an allegation that the defendant is about to transfer or encumber the property, or otherwise make it unavailable to satisfy a judgment. Contrary to the State's assertion, Washington does not require a finding of exigent circumstances if the attachment is sought only for real property. RCW 6.25.070(2)(a)(ii) clearly states that exigent circumstances, those appearing in RCW 6.25.030(5) through (7) or RCW 6.25.040(1), are required only if the attachment is to be levied on personal property.[3]
 
 
 10
 Washington provides for prompt notice of the seizure and of the right to an early hearing; however, an expeditious postattachment hearing did not save the Connecticut statute. The Court concluded that the safeguards provided by Connecticut law--an expeditious hearing, notice for such a hearing, judicial review of an adverse decision, and a double damages action if the original suit is commenced without probable cause--were insufficient to "cure the temporary deprivation that an earlier hearing might have prevented." Doehr, 501 U.S. at 15, 111 S.Ct. 2105. The Court contrasted the situation with that in Mitchell v. W.T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974), where the Court upheld a Louisiana statute that had similar safeguards, yet no requirement of predeprivation notice or hearing. The Court noted that in Mitchell, "the plaintiff had a vendor's lien to protect, the risk of error was minimal because the likelihood of recovery involved uncomplicated matters that lent themselves to documentary proof, and the plaintiff was required to put up a bond," factors all missing in Doehr. Doehr, 501 U.S. at 15, 111 S.Ct. 2105 (citation omitted).
 
 
 11
 With the exception of the requirement of a bond, Tri-State's situation is more similar to that in Doehr than that in Mitchell. In Mitchell, the party seeking sequestration had a vendor's lien on household goods sold on an installment contract to Mitchell, and there was no question of the vendor's interest in the property. Thus, unlike the instant case, the vendor clearly had an interest in the property, Mitchell's interest in the property was limited to any surplus remaining after foreclosure and sale of the property in the event of his default, and there was the risk that the buyer could conceal, transfer, or damage the goods. See Mitchell, 416 U.S. at 604, 607-09, 94 S.Ct. 1895.
 
 
 12
 Applying the Mathews factors to the instant case, this involves an attachment, which the Court in Doehr concluded involved a temporary or partial impairment to property rights "sufficient to merit due process protection." 501 U.S. at 12, 111 S.Ct. 2105. The private interest at stake therefore is significant, for attachment, among other ills, "ordinarily clouds title; [and] impairs the ability to sell or otherwise alienate the property." Id. at 11, 111 S.Ct. 2105. Second, as in Doehr, the risk of erroneous deprivation is high because this case involves a factual inquiry and is not amenable to realistic assessment based only on "one-sided, self-serving, and conclusory submissions." Id. at 14, 111 S.Ct. 2105. Like an alleged assault, an alleged breach of a construction contract is a fact-intensive inquiry, involving a determination of whether the contractor "fail[ed] to construct the home in accordance with the terms of the contract." CR 1 (Tri-State District Court Complaint), Ex. C (Affidavit of David Johnston in Support of Writ of Attachment). Finally, the Johnstons had no prior existing interest in the property they attached. Nor were there any allegations of exigent circumstances that would support the deprivation without notice and a hearing.[4]
 
 
 13
 Regarding the State's "ancillary" interest in either providing a predeprivation hearing or "forgoing the added burden of providing greater protections," Doehr, 501 U.S. at 11, 111 S.Ct. 2105, the State's interest in forgoing the predeprivation hearing can be described as minimal, for the Johnstons had no prior interest in the property, and the State already provides for a postattachment hearing. See id. at 16, 111 S.Ct. 2105 ("[T]he State cannot seriously plead additional financial or administrative burdens involving predeprivation hearings when it already claims to provide an immediate postdeprivation hearing.").
 
 
 14
 The State argues that procedural steps "could" be added in order to comply with federal due process requirements. But the point is that they were not. Tri-State's situation is indistinguishable from Doehr, except for the requirement of a bond, which four of the Supreme Court justices suggested would not have been sufficient to protect Doehr's due process rights. See Doehr, 501 U.S. at 23, 111 S.Ct. 2105 (opinion of White, J.).
 
 
 15
 The State also argues that Tri-State is not entitled to collaterally attack the writ because it did not object to the procedure in state court; however, Tri-State has followed the same procedure that Doehr followed. Doehr did not pursue his option of a postattachment hearing, but instead filed suit in federal district court claiming that the statute was unconstitutional. This is precisely what Tri-State has done. The State has not given, nor does there appear to be, any reason that the federal court should abstain from hearing the case.[5]
 
 
 16
 After a thorough analysis of the issue, the district court concluded that "[t]he instant case is distinguishable from the Doehr decision on the facts and the application." CR 55 at 3 (District Court Order). We disagree. As discussed above, we conclude that the instant case is very similar to Doehr on both the facts and the application. Moreover, we agree with the four-justice concurrence in Doehr that a bond does not excuse the need for a preattachment hearing in the absence of exigent circumstances, and conclude that Washington's bond requirement did not adequately safeguard Tri-State's rights. See 501 U.S. at 23, 111 S.Ct. 2105 (opinion of White, J.).
 
 
 17
 Justices White, Marshall, Stevens, and O'Connor reasoned that the amount of a bond would "bear no relation to the harm the defendant might suffer" from such "disruptions" as the inability to immediately sell the property or the blemish to an "otherwise strong credit rating." Id. at 22-23, 111 S.Ct. 2105. Because "a wrongful attachment can inflict injury that will not fully be redressed by recovery on the bond after a prompt postattachment hearing determines that the attachment was invalid," they concluded that due process required pre and postattachment hearings, a finding of extraordinary circumstances, and a bond. Id. at 23, 111 S.Ct. 2105.
 
 
 18
 Chief Justice Rehnquist, joined by Justice Blackmun, disagreed, stating that the Court should wait for concrete cases involving bonds and exigent circumstances before deciding whether an attachment required all of the above safeguards in order to satisfy due process. Id. at 30, 111 S.Ct. 2105 (Rehnquist, C.J., concurring in part and concurring in the judgment). He reasoned that, because the terms and conditions of a bond may vary, the requirement of a bond "in the abstract" was meaningless. Id.
 
 
 19
 An examination of the terms and conditions required by Washington on an attachment bond, however, does not support a finding that a bond would be sufficient to excuse the need here for prior notice and a hearing. The Washington statute requires that the bond be
 
 
 20
 double the amount for which plaintiff demands judgment, or such other amount as the court shall fix, conditional that the plaintiff will prosecute the action without delay and will pay all costs that may be adjudged to the defendant, and all damages that the defendant may sustain by reason of the writ of attachment ..., not exceeding the amount specified in such bond or undertaking, as the penalty thereof, should the same be wrongfully, oppressively or maliciously sued out.
 
 
 21
 RCW 6.25.080(1). The amount of the bond, therefore, is based on the amount the plaintiff is seeking. As the four-justice concurrence noted in Doehr, however, this amount may have no relation to the defendant's actual damages. 501 U.S. at 23, 111 S.Ct. 2105 (opinion of White, J.).
 
 
 22
 In order to recover on an attachment bond, Washington requires the defendant to show that the attachment was "wrongfully sued out." RCW 6.25.100. Although this phrase is not defined in the statute, the Washington Supreme Court has said that the fact that the defendant in the underlying action finally prevails would conclusively show that the attachment was wrongful. Newby v. United States Fidelity & Guar. Co., 49 Wash.2d 843, 307 P.2d 275, 277 (1957); Olsen v. National Grocery Co., 15 Wash.2d 164, 130 P.2d 78, 81 (1942). An attachment is wrongfully sued out if no grounds for the attachment existed; however, "if any one of the grounds upon which a plaintiff predicates his right to attachment is true, the attachment is not wrongfully sued out." Brown v. Peoples Nat'l Bank, 39 Wash.2d 776, 238 P.2d 1191, 1193-94 (1951). The court in Brown relied on the judgment in the underlying action in deciding that one of the grounds for attachment was true, meaning that a defendant would have to wait until the underlying action has been resolved in order to recover on an attachment bond. Washington's bond requirement, therefore, does not adequately address the concerns the Court raised in Doehr regarding even a temporary deprivation of property, such as the impairment of title and the potential disproportion between the harm suffered and the bond amount. See Doehr, 501 U.S. at 11, 15, 22-23, 111 S.Ct. 2105.
 
 
 23
 Moreover, although the Supreme Court has commented on the importance of a bond in reducing the risk of wrongful deprivation, see Doehr, 501 U.S. at 19-20, 111 S.Ct. 2105 (citing cases), the cases cited in Doehr did not rely solely on a bond requirement, in the absence of safeguards such as predeprivation notice and hearing, in determining the constitutionality of the statutes in question. For example, in Mitchell, the requirement that the seller post a bond was only one of many reasons that the Court upheld the Louisiana statute. Other factors that the Court considered included: the buyer's limited interest and the seller's "current real interest[ ]" in the property, 416 U.S. at 604, 94 S.Ct. 1895; the danger of destruction or alienation of the property if notice and a hearing were provided before seizure, id. at 608-09, 94 S.Ct. 1895; and the fact that "the existence of the debt, the lien, and the delinquency" were "uncomplicated matters that lend themselves to documentary proof," id. at 609-10, 94 S.Ct. 1895. None of these factors is present in the instant case.
 
 
 24
 Justice White's dissent in Fuentes, also cited in Doehr, merely stated that a creditor would not lightly undertake the expense of putting up a bond. Fuentes v. Shevin, 407 U.S. 67, 101, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (White, J., dissenting). The majority opinion in Fuentes described a bond requirement as a less effective safeguard than a prior hearing and as having a "minimal deterrent effect" on unfounded applications for a writ of replevin. Id. at 83-84, 92 S.Ct. 1983.
 
 
 25
 In North Ga. Finishing, Inc. v. Di-Chem, Inc., 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975), the Court found unconstitutional a garnishment statute that required the posting of a bond. The majority opinion did not discuss the bond requirement.
 
 
 26
 We therefore conclude that the requirement of a bond in the instant case--which involves prejudgment attachment, no prior notice or hearing, no exigent circumstances, a complex factual inquiry, and a party with no prior existing interest in the attached property--was not a sufficient safeguard of Tri-State's due process rights.[6]
 
 IV. CONCLUSION
 
 27
 For the foregoing reasons, we hold the Washington statute, RCW 6.25.070, unconstitutional under the due process clause of the Fourteenth Amendment, as applied to this case. We reverse the judgment of the district court and remand for further proceedings consistent with this opinion.
 
 
 28
 REVERSED and REMANDED.
 
 
 
 *
 The Honorable David A. Ezra, United States District Judge for the District of Hawaii, sitting by designation
 
 
 [1]
 The statute provides, in part:
 Subject to subsection (3) of this section [requiring prompt notice of the seizure and of the right to an early hearing after the seizure has occurred], the court shall issue the writ without prior notice to defendant and an opportunity for a prior hearing only if:
 (a)(i) The attachment is to be levied only on real property, or (ii) if it is to be levied on personal property, the ground alleged for issuance of attachment is one appearing in RCW 6.25.030(5) through (7) or in RCW 6.25.040(1) ...; and
 (b) The court finds, on the basis of specific facts alleged in the affidavit, after an ex parte hearing, that there is probable cause to believe the allegations of plaintiff's affidavit.
 RCW 6.25.070(2).
 
 
 [2]
 The statute at issue provided for prejudgment attachment of real property without a prior hearing "upon verification by oath of the plaintiff or of some competent affiant, that there is probable cause to sustain the validity of the plaintiff's claims." Doehr, 501 U.S. at 5, 111 S.Ct. 2105 (quoting Conn. Gen.Stat. § 52-278e (1991))
 
 
 [3]
 RCW 6.25.030 provides the grounds on which a writ of attachment may be issued. Some of those grounds certainly would constitute exigent circumstances--such as, that the defendant is about to remove his property from the state with intent to defraud his creditors. RCW 6.25.030(5). However, the grounds upon which the Johnstons based their motion was RCW 6.25.030(10), which provides that the writ of attachment may be issued if "the object for which the action is brought is to recover on a contract, express or implied." See CR 1 (Tri-State District Court Complaint), Ex. C at 2 (Affidavit of David Johnston in Support of Writ of Attachment) ("The reason for the attachment is that the object for which the action is brought is to recover on a contract, express or implied."). This does not constitute an extraordinary circumstance. Thus, although it is possible that a prejudgment attachment of real property without prior notice and hearing could be based on exigent circumstances, in this case it was not
 
 
 [4]
 Tri-State complains that the district court erred in relying on a declaration by Stephanie Bloomfield, the Johnstons' attorney, stating that she presented evidence of exigent circumstances to the Superior Court Commissioner. The district court acknowledged that portions of her declaration may have been hearsay but declined to rule on its admissibility because the declaration was not necessary to the court's determination that the statute was not unconstitutional. The district court therefore did not rely on this declaration; neither is there any evidence that the superior court relied on a finding of exigent circumstances in issuing the writ. Nor did it need to, for, as discussed above, RCW 6.25.070 permits attachment of real property without a finding of exigent circumstances
 
 
 [5]
 Both the Ninth Circuit and the Washington Supreme Court have decided the constitutionality of RCW 7.12, the predecessor to RCW 6.25. RCW 7.12, Washington's former statute on attachment, was amended and recodified in 1987 as RCW 6.25. See Pay'n Save Corp. v. Eads, 53 Wash.App. 443, 767 P.2d 592, 596 n. 6 (1989)
 In Hansen v. Weyerhaeuser Co. (In the Matter of Northwest Homes of Chehalis, Inc.), 526 F.2d 505 (9th Cir.1975), we upheld RCW 7.12 against a due process attack, on the basis that an attachment does not involve a "substantial taking of property." Id. at 506. We also relied on the fact that Washington provided for an early postdeprivation hearing. Id. at 507.
 The rule in this circuit is that "[w]hen an intervening Supreme Court decision undermines an existing precedent of the Ninth Circuit, and both cases are closely on point, a three judge panel of this court may reexamine our precedent to determine its continuing authority." Landreth v. Commissioner, 859 F.2d 643, 648 (9th Cir.1988) (quoting United States v. Lancellotti, 761 F.2d 1363, 1366 (9th Cir.1985)). Both of the lines of reasoning relied on in Hansen have been foreclosed by the Supreme Court's decision in Doehr, which post-dates the filing of Hansen by more than fifteen years and therefore constitutes intervening authority. See id.
 In Thompson v. DeHart, 84 Wash.2d 931, 530 P.2d 272 (1975) (en banc), the Washington Supreme Court upheld an attachment of real property under RCW 7.12 because of the presence of extraordinary circumstances indicating that the creditor needed protection from the fraudulent or wrongful disposal of property by the defendants. As discussed above, the instant case does not involve extraordinary circumstances. The court in Pay'n Save also stated that, under Thompson, an attachment affecting only a lien is not a constitutionally prohibited seizure, 767 P.2d at 596, reasoning which, again, has been contradicted by Doehr.
 
 
 [6]
 Although the Court in Doehr noted that Washington, in contrast to Connecticut, at least required a bond, it went on to caution that it did not "suggest that the statutory measures we have surveyed are necessarily free of due process problems or other constitutional infirmities in general." 501 U.S. at 18, 111 S.Ct. 2105