[No. 34702. Department Two. January 22, 1959.]

ERNEST HAWKINSON *et al.*, *Respondents*, v. WILLIAM J.
CONNIFF, *as Executor, Appellant.*[1]

*Stanley A. Taylor*, for appellant.

*Johnston & Raley*, for respondents.

ROSELLINI, J.—The defendant on this appeal challenges the sufficiency of the evidence to sustain the verdict for the plaintiffs, under the instructions given by the court, on a claim for services brought against the estate of Frank E. Knight, deceased. The plaintiffs, of course, are entitled to have the evidence viewed in the light most favorable to their cause.

There was little conflict in the evidence. It showed that

[1]Reported in 334 P. (2d) 540.

for about two and a half years immediately prior to his death, the plaintiffs, in a small rest home which they maintained in Sequim, had taken care of Frank E. Knight, of whose estate the defendant is executor. He was eighty-eight years of age when he entered the rest home and, due to his infirmities, required a great deal of personal care. The plaintiffs were paid $85 per month for his room, board, and care.

On December 7, 1956, the plaintiff Annie Hawkinson received from Mr. Knight a check made out to her in the sum of $10,200. On December 12, 1956, she took this check to the Olympic State Bank in Port Angeles, Washington, where she talked to the president regarding the cashing of it and gave him to understand that Mr. Knight wanted the money to go into a savings account in some other bank. She was given a cashier's check made to the order of F. E. Knight for $10,200. The cashier's check was taken by Mrs. Hawkinson to Mr. Knight and endorsed by him and was then deposited to Mrs. Hawkinson's account in the Sequim bank.

Mr. Knight died early on the morning of December 19, 1956. That morning the defendant and a niece of the decedent went to Sequim, talked with Mrs. Hawkinson and examined the personal effects of the decedent. Nothing was said about the money on that occasion, the defendant having no knowledge that the check had been issued. As a result of a conversation which Mrs. Hawkinson had that evening with the doctors who attended the decedent and with her daughter, she became apprehensive that, if she didn't return the money to the estate, she would be prosecuted for forgery or that an autopsy would be performed to determine whether the decedent had been poisoned. (An autopsy was in fact performed and revealed no evidence of foul play.) On the following day, she deposited the sum of $10,000 in the account of the decedent in the Olympic State Bank, by a check bearing the notation "Paid in full," and took the duplicate deposit slip to the defendant. The defendant had, in the meantime, discovered the withdrawal of the money from the account of the decedent, but had not

had an opportunity to question Mrs. Hawkinson about it. The following is her account of what took place on her visit to the defendant's office:

"Q What did you say to Mr. Conniff? A I asked what he wanted. Q And what did he say? A He said he wanted the money back. Q And then what did you say? A Oh, I said, 'when?' Q And he said what? A He said, 'now.' Q And then what did you say? A Well, I handed him the receipt from the bank and I said, 'is this soon enough?' Q That was a duplicate deposit slip? A Yes. Q And then what did you say, with respect to any inquiry to him as to what he was going to do? A I said that I was threatened for fraud. At the time I didn't know what that word meant. Q Just what you said to him is what you want to testify to? A Yes. And that I had forged the check and poisoned Mr. Knight. Q Well, what did you say, if anything, to Mr. Conniff with respect to asking him what he was going to do? A I asked him what he was going to do and he said, 'nothing'. Q And then did you say anything more to him? A Yes. I said, 'did you accuse me?' and he said, 'No. That was Mr. Knight's niece that did a lot of hollering, but I told her to be quiet,' he said, because the least she said the better off she would be."

The defendant's version of this encounter was as follows:

"A . . . I went to the bank about noon, or afternoon of the 19th, and on the morning of the 20th I came up and was appointed and qualified as Executor of the estate, and a short time after that Mrs. Hawkinson came into my office and stood at the side of my desk there, and said—she handed me a duplicate deposit slip and said, 'I paid the $10,000.00 back into the bank,' but she says, 'I kept the $200.00 because he owed me that.' I said, 'That is alright.' I said, 'I was going to bring a suit to get the money back if you hadn't paid it back, so I won't have to do it now.' I said, 'I won't make any claim for the $200.00 if he owed it to you,' and then she said, 'Will you give me a receipt for that?' I gave her the receipt, which is in evidence here, showing just that fact."

The defendant was appointed executor of the estate of Frank E. Knight, and he published notice to creditors, beginning December 27, 1956. On June 17, 1957, the plaintiff Annie Hawkinson filed a creditor's claim in the estate for the sum of $10,000, alleging that the decedent had paid her

the agreed sum of $10,200, in full payment of services which she performed for the decedent in nursing and caring for him between August 1, 1954, and December 18, 1956, and that she had erroneously delivered $10,000 to the executor by depositing this sum into the estate account.

On June 26, 1957, in an amended claim, the plaintiff Ernest Hawkinson was made an additional claimant.

The amended claim was rejected by the executor, whereupon the plaintiffs brought this action, based upon the claim. In its answer, the defendant denied the material allegations of the complaint and alleged as an affirmative defense that, on or about the 20th day of December, 1956, the plaintiffs, having full knowledge of all the facts connected with the matter in suit, voluntarily and of their own accord deposited a check in the sum of $10,000, payable to the estate of Frank E. Knight, into the estate account. In reply to this affirmative defense, the plaintiffs alleged that the deposit was made involuntarily and under compulsion and duress exercised by and originated from the heirs of the deceased.

There was no direct evidence of a contract between the plaintiffs and the deceased or of the reason why the original check was made to the order of Mrs. Hawkinson and the cashier's check was endorsed and delivered to her. No instructions regarding the evidence necessary to establish the existence of a contract or of a gift were given. The law of the case, in so far as it is pertinent to this appeal, was set forth in instructions five through eight, the correctness of which is not questioned by either party. These instructions were as follows:

"INSTRUCTION No. 5: You are instructed that under the law no one ought unjustly to enrich himself at the expense of another and that where one person has received money under such circumstances that in equity and good conscience he ought not to retain it, the person receiving the money is obliged to refund it to the person who delivered it.

"INSTRUCTION No. 6: You are instructed that the delivery by the Plaintiff of the $10,000.00 into the decedent's bank account does not constitute a voluntary payment unless the delivery was voluntary, the delivery was made pursuant to

a claim of right by the receiver of the money, and the delivery was made with full knowledge of all the facts by the person making the delivery.

"INSTRUCTION No. 7: You are instructed that if you find that the delivery of the $10,000 by the plaintiffs into the deceased's bank account constituted a payment as defined in these instructions, was made pursuant to a claim of right by the executor or heirs of the deceased, and was made with full knowledge of all the facts, then you must determine whether such payment was voluntary or involuntary.

"A payment is voluntary if made with full knowledge of all the facts and without any duress, compulsion, improper conduct or undue advantage on the part of the one receiving the payment.

"You are further instructed that in order to render a payment involuntary, the duress, compulsion, improper conduct or undue advantage must come from the party to whom or by whose direction the payment is made.

"INSTRUCTION No. 8: In order to render a payment compulsory and thus recoverable, the duress must be illegal, unjust, or oppressive, and the compulsion or coercion must come from the party to whom or by whose direction the payment is made, and the duress must have existed at the time the payment was actually made.

"Where the only coercion influencing the payor's mind is the fear of the consequences of his own act, it is not a legal duress."

■ Instruction No. 5 states the general rule relating to unjust enrichment, and the other three instructions define one set of circumstances under which one who receives a benefit is not considered to be unjustly enriched. It is a universally recognized rule that money voluntarily paid under a claim of right to the payment, and with knowledge by the payor of the facts on which the claim is based, cannot be recovered on the ground that the claim was illegal, or that there was no liability to pay in the first instance. *Speckert v. Bunker Hill Arizona Mining Co.,* 6 Wn. (2d) 39, 106 P. (2d) 602, 131 A. L. R. 125.

■ We will assume that the jury could infer from the fact that the checks were delivered to Mrs. Hawkinson and the proceeds deposited in her bank account before Mr. Knight's death, that he intended to transfer the money to

her. Whether the transfer was by gift or in performance of a contract is immaterial. This would amount to a finding that the claim of the executor was not well founded. Nevertheless, if the money was voluntarily paid to the defendant, as such payment was defined in the instructions, the plaintiffs were not entitled to recover it.

The evidence was that the defendant claimed the proceeds of the $10,200 check as property of the estate, but acceded to Mrs. Hawkinson's claim of $200 as money which the deceased had owed her. There is no suggestion that this claim of the executor was not made in good faith, and by her own testimony, Mrs. Hawkinson did not dispute it when she made the payment.

The evidence is also clear that the payment was made without any coercion or compulsion on the part of the defendant or anyone representing him. It is true that the defendant advised Mrs. Hawkinson that he would have sued her for the money had she not repaid it, but a threat of civil proceedings does not constitute duress if it is made in good faith and without coercion. In Restatement of Restitution, 290, § 71, it is said:

"b. The threat of beginning a civil action to enforce a claim, if made in good faith and unaccompanied by threatened seizure of property of the person or by other oppressive circumstances, is not duress and, if payment is made without mistake of fact, there can be no restitution even though the claim is baseless and the claimant is unreasonable in believing that it has validity. To allow a person who has made payment of a disputed debt later to seek restitution from the creditor, would be to permit him, by postponing suit, to choose his own time and place for litigation and to change his position from that of a defendant to that of a plaintiff, which would be unfair to the other party. . . ."

It is also apparent that Mrs. Hawkinson was the one person who had full knowledge of the facts on which the claim of the defendant was based. She knew the circumstances under which she received the check from the deceased, and at that time there was a witness who could have testified to those circumstances. (The witness died before this case came to trial.) If she were under duress by reason of her

fear of prosecution, that duress did not emanate from the defendant and did not render the payment involuntary. If Mrs. Hawkinson preferred to accede to the claim of the defendant and avoid the notoriety of litigation and possible prosecution (which the defendant had not threatened), that was a decision for which the defendant was in no way responsible.

The undisputed evidence brings the plaintiffs' case within the rule denying recovery of payments made voluntarily under a claim of right, and judgment should have been directed for the defendant.

The judgment is reversed.

WEAVER, C. J., HILL, DONWORTH, and FOSTER, JJ., concur.