# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THOMAS DUTCHER, a single person, and DIANE DUTCHER, a single person, | ) ) ) | No. 74976-5-I |
| | ) | DIVISION ONE |
| Respondents, | ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| | ) | |
| WYNDEN HOLMAN and JAMIE HOLMAN, a married couple, | ) ) | |
| | ) | |
| Appellants. | ) | FILED: April 10, 2017 |

LEACH, J. — Wynden Holman appeals the trial court's summary judgment decision in favor of Thomas Dutcher. Dutcher agreed to sell land to the Lummi Tribe of the Lummi Reservation (Lummi Nation). Twelve days before closing, Holman recorded a lien against the property. Dutcher paid Holman $11,550 to clear the title and ensure the transaction with the Lummi Nation could close on time. Later, Dutcher filed this lawsuit against Holman, disputing the lien and seeking damages for unjust enrichment, slander of title, and a violation of the Consumer Protection Act (CPA).[1]

Because Dutcher affirmatively established each element of the unjust enrichment and slander of title claims and Holman does not identify an issue of

---

[1] Ch. 19.86 RCW.

fact to preclude summary judgment, the trial court properly granted Dutcher summary judgment on those claims. But because questions of fact exist about the public interest impact element of the CPA claim, summary judgment on that claim is inappropriate. Thus, we affirm summary judgment on the unjust enrichment and slander of title claims and reverse summary judgment on the CPA claim and remand for further proceedings related to that claim.

In addition, we affirm the award of fees on the slander of title claim and award Dutcher additional fees incurred in connection with that claim on appeal.

### FACTS

In 2008, Holman's brother, Darin Holman, and Darin's now former wife, Kristen, acquired certain property in Bellingham, Washington. On the property, they established and operated a manufactured home sales business.

At some point after he acquired the property, Darin asked Holman to assist with various projects at the property. Holman provided funds and general assistance in getting the business up and running at the property. In April 2012, Holman recorded a lien against the property. Holman is a real estate broker. The lien stated it was for "Real Estate Services" Holman performed having a value of $18,354, $16,500 of which remained unpaid. In discovery, Holman could not identify any document supporting the lien.

From 2008 through August 2012, Kristen's father, Thomas Dutcher, loaned Darin and Kristen about $800,000 to finance their business and living expenses. In June 2012, to repay part of this loan, Darin and Kristen signed and delivered to Dutcher a warranty deed conveying the property to him. But Dutcher did not record the deed.

In June 2013, the Lummi Nation agreed to buy the property. Because Dutcher had not recorded the warranty deed, the county records showed Darin as the owner. After Dutcher recorded the deed on June 27, 2013, he and the Lummi Nation signed a second purchase and sale agreement, identifying Dutcher as the seller of the property. The agreement set a closing date of July 31, 2013.

Twelve days before closing, Holman filed a second lien for "[s]ign installation / septic installation / permits and associated fees / real estate services." The second lien claim stated that these services had a value of $18,454, with $16,600 still owed. It also stated that Darin Holman owned the property. In deposition, Holman admitted that he knew that Dutcher owned the property when he signed and recorded the lien.

Dutcher asked Holman to release the second lien claim. Holman refused but agreed to accept a reduced payment of $11,550. Dutcher knew that the Lummi Nation was unwilling to delay the closing date. To avoid losing the sale,

Dutcher paid Holman the $11,550 out of the sale proceeds. The property sale closed on July 30, 2013.

In 2014, Dutcher sued Holman. He alleged claims of unjust enrichment, slander of title, and violation of the CPA. Holman moved for partial summary judgment, seeking dismissal of Dutcher's slander of title and CPA claims. Dutcher moved for summary judgment on all claims. The trial court denied Holman's motion, granted Dutcher's, and entered a judgment awarding $75,331.39 to Dutcher.

Holman appeals the trial court's decision on both summary judgment motions.

### STANDARD OF REVIEW

This court reviews a grant of summary judgment de novo, engaging in the same inquiry as the trial court and viewing the facts and reasonable inferences from those facts in the light most favorable to the nonmoving party.[2] Still, "[t]he nonmoving party must set forth specific facts showing a genuine issue and cannot rest on mere allegations."[3] Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."[4]

---

[2] McGowan v. State, 148 Wn.2d 278, 289, 60 P.3d 67 (2002).
[3] Baldwin v. Sisters of Providence in Wash., Inc., 112 Wn.2d 127, 132, 769 P.2d 298 (1989).
[4] CR 56(c).

-4-

No. 74976-5-I / 5

ANALYSIS

Unjust Enrichment

First, Holman contends that the trial court erred in granting summary judgment on Dutcher's unjust enrichment claim. "Unjust enrichment is the method of recovery for the value of the benefit retained absent any contractual relationship because notions of fairness and justice require it."[5] The elements of unjust enrichment are "(1) the defendant receives a benefit, (2) the received benefit is at the plaintiff's expense, and (3) the circumstances make it unjust for the defendant to retain the benefit."[6] Holman claims issues of fact exist as to the third element.

Holman asserts that he performed services and provided money that went to improve the property and, therefore, it is not inequitable for him to retain the payment from the proceeds of the sale. He values his services at $18,454 but does not include any documentation to support this claim or show how he calculated this sum. No evidence shows that he is entitled to the $11,550 payment. Thus, no evidence creates a question of fact about whether it was unjust for Holman to retain this payment.

Holman claims that Dutcher's voluntary payment of the $11,550 to Holman precludes Dutcher from now claiming unjust enrichment. Under the voluntary

_____

[5] Young v. Young, 164 Wn.2d 477, 484, 191 P.3d 1258 (2008).
[6] Young, 164 Wn.2d at 484-85.

-5-

payment doctrine, "money voluntarily paid under a claim of right to the payment, and with knowledge by the payor of the facts on which the claim is based, cannot be recovered on the ground that the claim was illegal, or that there was no liability to pay in the first instance."[7] But this principle does not apply to a payment made under coercive circumstances.[8] At oral argument, Holman's counsel conceded that Dutcher did not have time to judicially contest Holman's claim before the closing date. Dutcher paid Holman under the reasonable belief that he would lose the sale to the Lummi Nation if he contested Holman's claim. Therefore, the payment cannot be considered voluntary.

Because Holman has not shown a question of fact about the inequity of his retention of the payment, summary judgment for Dutcher is appropriate.

## CPA Claim

Next, Holman challenges the trial court's granting summary judgment on Dutcher's CPA claim. To prevail on a CPA claim, a plaintiff must show (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) a public interest impact, (4) injury to the plaintiff in his or her business or property, and (5) a causal link between the unfair or deceptive act and the injury.[9] Holman claims that Dutcher has failed to establish the trade or commerce and public

---

[7] Hawkinson v. Conniff, 53 Wn.2d 454, 458, 334 P.2d 540 (1959).
[8] See Hawkinson, 53 Wn.2d at 458.
[9] Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780, 719 P.2d 531 (1986).

interest impact elements. He also claims that no facts show a public interest impact and the CPA claim should have been dismissed.

*Trade or Commerce*

First, we consider whether the transaction took place in trade or commerce. Holman contends that private transactions among family members do not occur in trade or commerce. We disagree with this categorical view. Here, Holman rested the lien claims upon the alleged provision of real estate services. Because he is a real estate broker and the lien purportedly secured payment for real estate services, his conduct occurred in his trade or business.

Holman also claims that his conduct was not in trade or commerce because he did not act in furtherance of his business or career. Trade or commerce "'includes only the entrepreneurial or commercial aspects of professional services, not the substantive quality of services provided.'"[10] "Claims directed at the competence of and strategies employed by a professional amount to allegations of negligence and are exempt from the Consumer Protection Act."[11] Here, however, Dutcher's claims do not involve allegations of professional malpractice or negligence. Rather, they involve the misuse of

---

[10] Michael v. Mosquera-Lacy, 165 Wn.2d 595, 602-03, 200 P.3d 695 (2009) (quoting Ramos v. Arnold, 141 Wn. App. 11, 20, 169 P.3d 482 (2007)); see also Quinn v. Connelly, 63 Wn. App. 733, 742, 821 P.2d 1256 (1992).

[11] Ramos, 141 Wn. App. at 20.

Holman's profession as a real estate broker. Holman cannot rely on cases involving allegations of negligence to avoid liability under the CPA.

*Public Interest Impact*

Next, we consider whether Holman's actions have a public interest impact. A plaintiff can show a public interest impact in two ways. "[A] claimant may establish that the act or practice is injurious to the public interest because it . . . (a) [i]njured other persons; (b) had the capacity to injure other persons; or (c) has the capacity to injure other persons."[12] Or a plaintiff can show a per se public interest impact if the conduct violates a statute that contains a legislative declaration that the conduct impacts the public interest.[13] Dutcher claims that he met this element under either test.

First, Dutcher asserts that Holman's actions constitute a per se public interest impact because Holman violated the contractor registration act.[14] Indeed, a violation of the contractor registration act constitutes a public interest impact.[15] But Dutcher does not show a violation of the contractor registration act. Dutcher asserts that because Holman was not a licensed contractor, his lien

---

[12] RCW 19.86.093.
[13] Hangman Ridge, 105 Wn.2d at 791.
[14] Ch. 18.27 RCW.
[15] RCW 18.27.350 ("The fact that a contractor is found to have committed a misdemeanor or infraction under [the contractor registration act] shall be deemed to affect the public interest and shall constitute a violation of chapter 19.86 RCW.").

claims for contracting services constituted a violation of the contractor registration act.[16] While Holman admits that he is not and never has been a licensed contractor, Dutcher does not show that Holman ever acted as a contractor. Dutcher contends that Holman held himself out as a contractor by filing a material and mechanic's lien. But the form that Holman used does not reference the contractor registration act. Nor do the claims of lien state that Holman was doing contracting work. Because Dutcher has not established that Holman violated the contractor registration act, he has not established a per se violation of the CPA.[17]

Second, Dutcher asserts that Holman's conduct impacts the public interest because it has the capacity to injure others. "When the transaction is a private dispute . . . and not a consumer transaction, it is more difficult to show public interest in the subject matter. There must be a likelihood additional persons have

---

[16] RCW 18.27.080 ("No person . . . acting in the capacity of a contractor may bring or maintain any action in any court of this state for the collection of compensation for the performance of any work . . . for which registration is required under this chapter without alleging and proving that he or she was a duly registered contractor . . . at the time he or she contracted for the performance of such work.").

[17] Dutcher cites Bowers v. Transamerica Title Ins. Co., 100 Wn.2d 581, 675 P.2d 193 (1983), for the proposition that providing professional services without a license gives rise to a per se CPA violation. Bowers found that unauthorized practice of law had a public interest impact. But Bowers did not say that this conduct had a per se public interest impact. Rather, it found the public interest impact element was met because the practice was capable of repetition. Bowers, 100 Wn.2d at 592. See also State v. Pac. Health Ctr., Inc., 135 Wn. App. 149, 172-73, 143 P.3d 618 (2006).

been or will be injured in the same fashion."[18] Factors indicating public interest in the context of a private dispute include: "(1) Were the alleged acts committed in the course of defendant's business? (2) Did defendant advertise to the public in general? (3) Did defendant actively solicit this particular plaintiff, indicating potential solicitation of others? (4) Did plaintiff and defendant occupy unequal bargaining positions?"[19] These factors "represent indicia of an effect on public interest from which a trier of fact could reasonably find public interest impact."[20]

Considering these factors, Dutcher does not establish a public interest impact as a matter of law. Dutcher relies on the fact that Holman twice recorded a baseless lien to show that this action is likely to affect additional plaintiffs. But both claims of lien relied on the same set of services that Holman insists that he provided, and both claims of lien relate to the same property. No evidence shows that Holman advertised his services or solicited Dutcher's business. While Dutcher has presented evidence from which a reasonable jury could conclude that Holman's conduct did impact the public interest, that jury could also reach the opposite conclusion.[21]

---

[18] Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc., 86 Wn. App. 732, 744-45, 935 P.2d 628 (1997).
[19] Hangman Ridge, 105 Wn.2d at 790-91.
[20] Hangman Ridge, 105 Wn.2d at 791.
[21] See Hangman Ridge, 105 Wn.2d at 789-90 (stating that "whether the public has an interest in any given action is to be determined by the trier of fact from several factors").

Thus, we also reject Holman's assertion that no evidence shows a public interest impact and that he is entitled to summary judgment on the CPA claim. As noted above, Holman twice recorded a baseless lien and appeared to use his position as a real estate broker to do so. A reasonable jury could find this conduct is likely to injure additional plaintiffs in the same fashion.[22]

In sum, although the evidence is sufficient to support a fact finder's conclusion that there was a public interest impact, it is insufficient to establish a public interest impact as a matter of law.

Dutcher has established four elements of the CPA claim as a matter of law, but he has not shown that he is entitled to summary judgment on the public interest impact element. So Holman has not shown that he is entitled to summary judgment on his CPA claim.

### Slander of Title

We next consider Dutcher's slander of title claim. To prevail on a slander of title claim, a claimant must show that words concerning the property (1) are false, (2) were maliciously published, (3) were spoken with reference to some pending sale or purchase of property, (4) go to defeat plaintiff's title, and (5) resulted in plaintiff's pecuniary loss.[23] Holman first claims that issues of fact

---

[22] See Hangman Ridge, 105 Wn.2d at 790.

[23] Rorvig v. Douglas, 123 Wn.2d 854, 859, 873 P.2d 492 (1994) (citing Pay 'N Save Corp. v. Eads, 53 Wn. App. 443, 448, 767 P.2d 592 (1989)).

exist about the malice and pecuniary loss elements. He also asserts that as a matter of law, because the liens did not defeat Dutcher's title, the trial court should have granted Holman's motion for summary judgment on this claim.

As a preliminary matter, Holman claims that a plaintiff making a slander of title claim has a heightened burden of proof. Holman asserts that because a slander of title claim includes "malice" as an element, the claimant must prove this claim by "clear, cogent, and convincing evidence." Holman relies on Duc Tan v. Le,[24] which applies this heightened standard to malice in a defamation case. But Holman cites no case applying this standard outside of the First Amendment context, and we assume there is none.[25] Holman does not persuade this court that more than the preponderance of the evidence standard should apply to slander of title claims.[26] Besides, Holman can show no issue of fact under either standard.

---

[24] 177 Wn.2d 649, 668, 300 P.3d 356 (2013).
[25] Duc Tan, 177 Wn.2d at 668.
[26] Further, even if Holman could show that the clear and convincing standard applies in this case, Washington case law suggests that the standard would apply only to the malice element, not each element as Holman asserts. See Duc Tan, 177 Wn.2d at 668 & n.5.

*Malice*

Holman maintains that a question of fact exists about whether he acted with malice. "The element of malice is met when the slanderous statement is not made in good faith or is not prompted by a reasonable belief in its veracity."[27]

This case is like <u>Rorvig v. Douglas</u>.[28] In <u>Rorvig</u>, the court held that defendants acted with malice by recording a memorandum of agreement to prevent a proposed sale when they knew no agreement had been reached.[29] Similarly here, Holman admitted in deposition testimony that he knew of no legal authority giving him the right to assert the liens:

> Q   What . . . information or authority were you relying on to support the conclusion that under the laws of the State of Washington, you could assert—you could record a lien that would be an encumbrance on this property?
>
> A   None.
>
> Q   Even though you swore that you had the right under the laws of the State of Washington; right?
>
> A   Yes.

He further admits that no contract existed for his alleged services or claimed compensation. Finally, Holman acknowledges that he knew that Dutcher owned

---

[27] <u>Rorvig</u>, 123 Wn.2d at 860.
[28] 123 Wn.2d 854, 873 P.2d 492 (1994).
[29] <u>Rorvig</u>, 123 Wn.2d at 860-61.

-13-

the property when Holman recorded the lien. These undisputed facts establish that Holman acted with malice.

Holman attempts to show an issue of fact by asserting that Dutcher acknowledged the debt and negotiated a payoff. We disagree. Dutcher never acknowledged the lien's validity. Dutcher paid Holman not because he thought the lien was valid, but because he needed to clear the title so the sale to the Lummi Nation could close. That Dutcher negotiated a payoff does not change the fact that Holman maliciously filed baseless claims of lien.

*Pecuniary Loss*

Holman also maintains that a question of fact exists about the pecuniary loss element.

> "(1) The pecuniary loss for which a publisher of injurious falsehoods is subject to liability is restricted to
> (a) the pecuniary loss that results directly and immediately from the effect of the conduct of third persons, including impairment of vendibility or value caused by disparagement, and
> (b) the expense of measures reasonably necessary to counteract the publication, including litigation to remove the doubt cast upon vendibility or value by disparagement."[30]

Holman argues that the lien did not impair vendibility because Dutcher sold the property at the time he paid the lien. But this argument lacks merit. The

---

[30] Rorvig, 123 Wn.2d at 863 (emphasis omitted) (quoting RESTATEMENT (SECOND) OF TORTS § 633 (AM. LAW INST. 1977)).

false lien compelled Dutcher to pay $11,550 in order to sell the property. This sufficiently shows a pecuniary loss.

*Goes To Defeat Plaintiff's Title*

Next, Holman contends that the trial court should have dismissed the slander of title claim because the false publication did not defeat Dutcher's title. Holman relies on Black's Law Dictionary definitions of "defeat" and "title." To "defeat" is "[t]o annul or render (something) void <to defeat title>."[31] "Title" is "[t]he union of all elements (as ownership, possession, and custody) constituting the legal right to control and dispose of property."[32] Relying on these definitions, Holman asserts that a mere monetary encumbrance does not impact any elements of title in such a way as to render it void. Because the lien did not void Dutcher's title, Holman argues, it did not defeat Dutcher's title. We disagree.

Slander of title does not require that the false publication in fact defeats the plaintiff's title, only that it goes to defeat the plaintiff's title. Here, Holman does not dispute that if Dutcher had not negotiated the release of Holman's lien, Dutcher could not have conveyed clear title to his buyer, preventing the sale to the Lummi Nation. Thus, under the facts of this case, the false publication interfered with Dutcher's ownership rights, specifically, his right to dispose of the

---

[31] BLACK'S LAW DICTIONARY 507 (10th ed. 2014).
[32] BLACK'S at 1712.

property.[33] Slander of title does not require that the false publication entirely and permanently annul the plaintiff's title. A cloud that impairs a sale goes to defeat plaintiff's title. Accordingly, we conclude that as a matter of law, Holman's liens did go to defeat Dutcher's title.

Because Dutcher establishes every element of the slander of title claim and Holman identifies no issue of fact, the trial court properly granted summary judgment for Dutcher on this claim.

### Special Damages for Slander of Title

Holman also claims that any damages awarded to Dutcher on his slander of title claim should not include attorney fees. Generally, "absent a contract, statute, or recognized ground of equity, the prevailing party does not recover attorney fees as costs of litigation."[34] But Rorvig held that "attorney fees are recoverable as special damages in a slander of title action."[35] Our Supreme Court reasoned that "actual damages are difficult to establish and often times are minimal in slander of title. Fairness requires the plaintiff to have some recourse against the intentional malicious acts of the defendant."[36]

---

[33] See Guimont v. Clarke, 121 Wn.2d 586, 602, 854 P.2d 1 (1993) (identifying the right to dispose of property as a fundamental attribute of property ownership).
[34] Rorvig, 123 Wn.2d at 861.
[35] Rorvig, 123 Wn.2d at 861.
[36] Rorvig, 123 Wn.2d at 862.

Holman attempts to distinguish <u>Rorvig</u> by citing <u>Rorvig</u>'s statement that "[a]ttorney fees incurred in removing the cloud from the title and restoring vendibility are necessary expenses of counteracting the effects of the slander."[37] Relying on this language, Holman claims Dutcher cannot recover attorney fees because he did not incur fees in "removing the cloud from the title" and "restoring vendibility."

But our Supreme Court has clearly recognized that attorney fees can be recovered as special damages in slander of title actions.[38] The court noted that the defendant in these actions leaves the plaintiff with one course of action, litigation.[39] No case limits this recovery to those fees incurred removing the stain of the slander. Moreover, Dutcher's choice to pay a negotiated sum to release the lien rather than litigate to clear the title likely mitigated his damages by avoiding the loss of the sale. Dutcher should not lose his right to recover attorney fees because he chose to mitigate his damages and then litigate with Holman. The same policy reasons for allowing the recovery of fees are present whether Dutcher sued to clear title or sued to recover the money Holman forced him to pay to clear title.

---

[37] <u>Rorvig</u>, 123 Wn.2d at 863.

[38] <u>City of Seattle v. McCready</u>, 131 Wn.2d 266, 275, 278, 931 P.2d 156 (1997) (recognizing <u>Rorvig</u>'s holding that attorney fees as damages are available in slander of title actions and declining to extend the rule to actions brought for the quashing of warrants).

[39] <u>Rorvig</u>, 123 Wn.2d at 862.

The trial court properly awarded attorney fees on the slander of title claim.

## Attorney Fees

Dutcher requests an award of attorney fees incurred in this appeal.[40] "Attorney fees and other legal costs incurred in clearing a slandered title are recoverable as damages," both at trial and on appeal.[41] The CPA also permits award of reasonable attorney fees in a successful appeal.[42] Because Dutcher is the prevailing party on the slander of title claim, he is entitled to recover attorney fees incurred for that claim. However, because his CPA claim remains to be decided in the trial court on remand, any decision on this fee claim is premature. We grant Dutcher's request for fees in part.

## CONCLUSION

We affirm in part and reverse in part. Dutcher has established, by undisputed facts, each element of his slander of title and unjust enrichment claims. Because Holman does not identify an issue of fact on either, we affirm summary judgment for Dutcher on those claims. We also affirm the trial court's decision to award attorney fees to Dutcher and award additional fees incurred in this appeal.

---

[40] RAP 18.1.

[41] Amresco Indep. Funding, Inc., v. SPS Props., LLC, 129 Wn. App. 532, 540, 119 P.3d 884 (2005).

[42] Evergreen Collectors v. Holt, 60 Wn. App. 151, 157, 803 P.2d 10 (1991).

A question of fact about the public interest impact element exists for Dutcher's CPA claim. For this reason, summary judgment in favor of either party on this claim is inappropriate. We reverse summary judgment on the CPA claim.

We remand this case to the trial court for further proceedings consistent with this opinion.

Leach, J.

WE CONCUR:

Trickey, ACJ

Appelwick, J.