# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

MARK and DAINA CARTER, husband and wife,

Appellants,

v.

PNC BANK, NATIONAL ASSOCIATION,

Respondent.

No. 81698-5-I

DIVISION ONE

UNPUBLISHED OPINION

APPELWICK, J. — The Carters sued to quiet title to their home. They sought to extinguish the deed of trust lien held by PNC Bank on the basis that the statute of limitations had run and that the deed of trust was no longer enforceable. The trial court granted summary judgment for PNC Bank. The Carters sold the house and paid off the lien. The Carters seek reversal of the summary judgment quieting title in their favor, and remand to recoup the amount they paid to obtain a release of the lien in order to close the sale. We affirm.

## FACTS

Mark and Daina Carter owned their residence on 170th Avenue Southeast in Bellevue, Washington. Using this property as collateral, they took out a second mortgage of $350,000 with National City Bank. They signed both a promissory note on August 24, 2006 and a deed of trust on August 29, 2006 to secure payment on the note. The recorded deed of trust was a lien on the property. The promissory

note stated a draw period of 10 years, with monthly billings. The deed of trust included a maturity date of August 24, 2036. PNC Bank National Association (PNC Bank) acquired this loan around October 2008.

The Carters filed for Chapter 7 bankruptcy on April 27, 2012 in the United States Bankruptcy Court for the Western District of Washington. The bankruptcy petition included the deed of trust. PNC Bank had not commenced either a judicial or a nonjudicial foreclosure of the property.

The Carters' bankruptcy proceedings closed without discharge on August 14, 2012. They petitioned to reopen the bankruptcy was granted on August 20, 2012.[1] Also on August 20, 2012, the bankruptcy court discharged the debtors. Following the discharge, additional proceedings occurred.

Years after the discharge, on April 4, 2017, the Carters filed a motion to abandon property of the bankruptcy estate. On June 22, 2017, the bankruptcy court granted the motion, finding the property was abandoned from the bankruptcy estate pursuant to 11 U.S.C. § 554(b).

The Carters filed a quiet title action in superior court on February 5, 2019. In the complaint, the Carters state that they made no payments on the debt secured by the deed of trust after the bankruptcy filing. They claim that PNC Bank had failed to enforce its deed of trust within the six year statute of limitations

---

[1] On August 31, 2012, the clerk reclosed the case a second time due to an administrative error. On its own motion, the court reopened the case on November 8, 2012 due to the administrative error. PNC Bank's lawyer stated the August 31 closing was an administrative error that occurred "because we pressed the wrong button essentially."

following the August 20, 2012 bankruptcy discharge. The Carters and PNC Bank filed competing motions for summary judgment. The Carters also moved to strike a declaration by the bankruptcy trustee's lawyer, Kathryn Ellis, which PNC Bank used for support to show that the property remained part of the bankruptcy estate.[2] The Carters argued that Ellis's declaration was inadmissible because it contained legal conclusions.

In its motion for summary judgment, PNC Bank argued that the statute of limitations had not run.[3] It argued that the statute of limitations was tolled by the bankruptcy filing, and the property remained part of the bankruptcy estate until it was abandoned in 2017.[4]

The court denied the Carters' motion for summary judgment. It concluded that the Carters' quiet title claim to their property failed, because the home remained part of the bankruptcy estate until abandoned in 2017. The court also determined that the statute of limitations had not yet run, thus giving PNC Bank a right to foreclose. The trial court granted PNC Bank's motion for summary judgment on June 22, 2020. The Carters' motion to reconsider was denied on July

---

[2] The trial court struck portions of Kathryn Ellis's declaration as inadmissible conclusions of law.

[3] PNC Bank also argued that the debt underlying the deed of trust is an installment contract and the statute of limitations runs against each installment payment as it becomes due. Herzog v. Herzog, 23 Wn.2d 382, 388, 161 P.2d 142 (1945).

[4] To support this, PNC Bank cited to a federal bankruptcy statute to argue that "[t]he stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate." 11 U.S.C. § 362(c)(1).

3

20, 2020. The Carters appealed the motion for summary judgment on July 22, 2020.

The Carters then asked PNC Bank to remove its lien so the Carters could close the sale on their house and pursue an appeal. The Carters had listed the property for sale because they were "unable to sustain [their] mortgage payments." Mark[5] stated in his declaration that PNC Bank had not responded to their request to remove the lien as of the closing date of July 23, 2020. The Carters asked the trial court, on July 28, 2020, to authorize the property sale proceeds to be paid into the court registry in lieu of a supersedeas bond to stay enforcement of the summary judgment. The Carters also asked the trial court to order PNC Bank to release the lien. The trial court denied this request on July 31, 2020, stating, "[T]he Court is unclear about whether [PNC Bank]'s lien is preventing a private sale of [the Carters]' home. Such a private sale would presumably generate funds sufficient to pay [the Carters'] lien in full, and allow for the anticipated costs of appeal to be placed in the Court's registry." The court also directed the parties to meet and confer on a plan where the Carters would be allowed to sell their home on the private market and pay PNC Bank in full for the lien value.

On August 21, 2020, the Carters amended their appeal to appeal both the summary judgment and the order to meet and confer with PNC Bank. The Carters concede that they have already sold their property and paid PNC Bank.

---

[5] Because Mark and Daina share a last name, we refer to Mark by his first name here. We mean no disrespect.

DISCUSSION

## I. Quiet Title Claim is Moot

The Carters attempted to quiet title on the Bellevue property on the basis that their deed of trust with PNC Bank was not enforceable. After summary judgment was granted to PNC Bank, the Carters received an offer on their house. The evidence shows the offer had a closing date of July 23, 2020. Mark said, "All paperwork is signed, and the escrow company is prepared to close the transaction." PNC Bank's opposition to the Carters' motion to deposit proceeds and release the lien stated, "The Carters have sold their multi-million dollar home and have significant equity in the property." The Carters' say they "have already paid PNC and the property has been sold."

Because the Carters sold the property and they are not title holders, we cannot quiet title in their favor. Therefore, this issue is moot.[6]

## II. Lien Payment

### A. Due Process

The Carters asked the court to authorize the property sale proceeds to be paid into the court registry in lieu of a supersedeas bond to stay enforcement of the summary judgment.[7] In response to this request, the trial court ordered the

---

[6] The Carters argue that the trial court abused its discretion in admitting the declaration of Kathryn Ellis, the trustee's lawyer. Their argument about the declaration directly relates to the quiet title claim. Because the quiet title claim is moot, we decline to review the admissibility of Ellis's declaration.

[7] "A supersedeas bond is a means of staying enforcement of a trial court judgment while on appeal." Guest v. Lange, 195 Wn. App. 330, 338, 381 P.3d 130 (2016).

parties "to meet and confer to develop a plan by which a) [PNC Bank is] paid in full the face value of its lien; and b) [the Carters] are able to sell their home on the private market, which may generate a higher sale price than a sale by foreclosure." The Carters claim that ordering them "to pay the de facto judgment in full" deprived them of an opportunity to "present a defense to this sua sponte judicial foreclosure," and violated their right to due process.[8]

The due process clauses of the Fourteenth Amendment and the Washington State Constitution provide that a state cannot deprive any person of life, liberty or property without due process. U.S. CONST. amend. XIV, § 1; WASH. CONST. Art. I § 3. "The fundamental requisites of due process are 'the opportunity to be heard,' and 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" Olympic Forest Prods., Inc. v. Chaussee Corp., 82 Wn.2d 418, 422, 511 P.2d 1002 (1973) (citations omitted) (quoting Grannis v. Ordean, 234 U.S. 385, 394, 34 S. Ct. 779, 58 L. Ed. 1363 (1914); Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950)).

---

[8] The Carters cite State v. Ralph Williams' North West Chrysler Plymouth, Inc., 87 Wn.2d 327, 335, 553 P.2d 442 (1976), to argue that notice is required for proceedings affecting a party, and the party needs an opportunity to respond. That case refers to proceedings; a meet and confer is not a proceeding. The Carters also cite to In re Henry, 266 B.R. 457, 474 (C.D. Cal. 2001), to argue that a bankruptcy discharge eliminates the debtor's personal liability. However, Henry does not discuss due process.

In granting summary judgment for PNC Bank, the trial court had to have determined that PNC Bank had a valid and enforceable lien on the property. When the court denied the Carters a motion to deposit proceeds into the court registry, it treated PNC Bank's lien as valid. Without filing a supersedeas bond, the Carters did not stay PNC Bank's right to enforce the deed of trust against their property pending the appeal. See Guest, 195 Wn. App. at 338 ("[W]hen a supersedeas bond is filed, the judgment cannot be enforced."). To pass clear title to a buyer upon sale of the property, the Carters needed to satisfy PNC Bank's lien.[9] See Carpenter v. Folkerts, 29 Wn. App. 73, 77, 627 P.2d 559 (1981) ("To obtain clear title the Folkerts must satisfy the liens on the property"). Because of the summary judgment, PNC Bank had the right to enforce its lien, and the Carters chose to pay off the lien in order to establish clear title of the property. The bank did not order the Carters to sell their property, or order them to satisfy the lien without selling the property. The order to meet and confer did not take anything away from the Carters or impose any new substantive obligations. The Carters participated fully in the summary judgment proceedings. The trial court's order did not violate due process.

---

[9] Alternatively, the lien would be released if the Carters prevailed on appeal.

B. Ultra Vires

The Carters argue that the trial court acted ultra vires,[10] or outside of its authority, by ordering them to pay PNC Bank in full.[11]  They request "remand to the trial court with directions to enter a judgment against PNC [Bank]."  PNC Bank responds by stating that the trial court acted within its authority, as it did not order the Carters to pay PNC Bank, or order a judicial foreclosure.  It argues further that the Carters cannot "claw back the amount they paid to satisfy PNC [Bank]'s lien," as this would be barred by the voluntary payment doctrine.

1. Trial Court's Authority

Citing RAP 7.2, the Carters argue that the trial court acted outside of its authority.[12]  The Carters argue that the trial court did not have authority to order them to pay PNC Bank its lien in full out of the property sale proceeds.

RAP 7.2(e) contains a list of actions that trial courts are authorized to take after appellate review is accepted.  RAP 7.2(e)(2) allows the trial court to hear and determine "actions to change or modify a decision that is subject to modification by the court that initially made the decision.  The postjudgment motion or action shall first be heard by the trial court, which shall decide the matter."  The rule states in part, "[I]f the trial court determination will change a decision then being reviewed

---

[10] "An ultra vires act is one performed without any authority to act on the subject."  Haslund v. City of Seattle, 86 Wn.2d 607, 622, 547 P.2d 1221 (1976).

[11] The Carters allege that the trial court "authorized a security bond despite the judgment being paid in full."  The Carters do not cite to the record, and the record does not otherwise reflect this.

[12] The Carters also argue that RAP 8.1 applies.  RAP 8.1 covers supersedeas bonds, which the Carters did not file.  Therefore, RAP 8.1 does not apply.

by the appellate court, the permission of the appellate court must be obtained prior to the formal entry of the trial court decision." Id.

Here, the Carters filed their initial appeal on July 22, 2020. On July 28, 2020, they filed a motion in the trial court to "deposit sale proceeds into the court registry and release the lien." On July 31, 2020, the trial court denied the motion and ordered the parties to meet and confer.

In ordering the meet and confer, the trial court did not change the decision being reviewed by the appellate court, so it did not need to obtain permission before the formal entry of the decision. The plaintiffs' motion to deposit proceeds into the court registry and release the lien was a postjudgment motion as authorized under RAP 7.2(e)(2). Denying it did not establish new rights and did not violate RAP 7.2. The trial court acted within its authority in entering the July 31, 2020 order.

2. Voluntary Payment Doctrine

The Carters ask this court to reverse and remand for the trial court to determine a damages award against PNC Bank. PNC Bank argues the voluntary payment doctrine bars the money judgment that the Carters seek in order to "claw back" their payment of the lien.

The voluntary payment doctrine states that "money voluntarily paid under a claim of right to the payment, and with knowledge by the payor of the facts on which the claim is based, cannot be recovered on the ground that the claim was illegal, or that there was no liability to pay in the first instance." Hawkinson v.

9

Conniff, 53 Wn.2d 454, 458, 334 P.2d 540 (1959). "[W]hen a payor sues for the restitution of an allegedly involuntary payment, the essential elements are (1) that payment was made, (2) that it was made involuntarily, and (3) that the payee would be unjustly enriched if allowed to retain the payment." Clark v. Luepke, 60 Wn. App. 848, 851, 809 P.2d 752 (1991), aff'd, 118 Wn.2d 577, 826 P.2d 147 (1992). Under this test, "the payor has the burden of proving each of these elements by a preponderance of the evidence." Id.

The Carters argue that they did not voluntarily pay PNC Bank. They argue that they needed money after their business lost most of its revenue due to COVID-19. They also argue that PNC Bank would not release the lien and allow the sale to close without being paid, and that the trial court ordered them to pay the lien in full despite their pending appeal. PNC Bank does not dispute that it would not release the lien to facilitate the sale, but correctly argues, "[t]here are no facts in the record showing that the Carters suddenly needed to sell the Property to pay off PNC's lien because PNC did anything, or for any other reason."

As noted above, the Carters were not forced by the court to pay a debt they did not owe. In granting summary judgment for PNC Bank, the trial court determined the lien was valid and enforceable. The Carters failed to file a supersedeas bond to stay enforcement of the deed of trust pending appeal of the summary judgment order. PNC Bank was under no obligation to release the lien without being paid.

PNC Bank never moved for foreclosure. The Carters listed their home for sale and chose to close the sale. Being able to pass clear title to a willing buyer is the only reason apparent from the record for the Carters to pay the lien. That payment was the Carters' choice, presumably one they found advantageous.

The Carters failed meet their burden to show by a preponderance of the evidence that they made an involuntary payment. As a result, the voluntary payment doctrine applies to the funds paid to PNC Bank. The Carters fail to establish a basis for their claim to damages.

III. Attorney Fees

The Carters argue that, because title on the property should have been quieted in their favor, they are entitled to attorney fees and costs under RAP 18.1. "[W]here a prevailing party is entitled to attorney fees below, they are entitled to attorney fees if they prevail on appeal." Sharbono v. Universal Underwriters Ins. Co., 139 Wn. App. 383, 423, 161 P.3d 406 (2007). The Carters do not prevail on appeal. They are not entitled to fees.

PNC Bank seeks attorney fees and costs under the deed of trust as the prevailing party. The deed of trust contains language granting attorney fees: "Grantor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorney fees, court costs, and other legal expenses."[13]

---

[13] The Carters argue that PNC Bank did not ask for fees at the trial court level and RAP 2.5 precludes its request on appeal. However, PNC Bank

Well-settled state law provides that contract provisions providing attorney fees in an action include both fees at trial and those on appeal. Boyd v. Davis, 127 Wn.2d 256, 264, 897 P.2d 1239 (1995); Granite Equip. Leasing Corp. v. Hutton, 84 Wn.2d 320, 327, 525 P.2d 223 (1974). Because the deed of trust provides for attorney fees and costs to be awarded to the prevailing party, PNC Bank is awarded its attorney fees and costs on appeal.

We affirm.

_Appelwick, J._

WE CONCUR:

_Coburn, J._            _Dwyer, J._

---

requested fees at trial court level. In its prayer for relief, it included that the "Defendant [should] be awarded its attorneys' fees and costs incurred in defending against the Plaintiffs claims pursuant to the terms of the Note and Deed of Trust and applicable statutes and/or common law."